\* CAZASSA *v.* CAZASSA.

· (*Jackson.* MAY 18, 1893.)

1. DEED. *Delivery not proved, when.*

No intention to deliver either of two deeds, which remained, unregistered but acknowledged, in the grantor's possession, unknown to the grantee, until death, and were found among some old papers, and not among his valuable ones, is shown, where they were made at the same time to a twelve-year-old son of the grantor, and one expressly provided for future delivery, while the other, although silent on that point, included the family residence, and no change of possession or control and use of the property was ever made.

Case cited and distinguished: Davis *v.* Garrett, 91 Tenn., 147.

2. LIFE INSURANCE. *Chargeable to child as an advancement, when.*

Insurance taken out by a father, upon his own life, in the name of a child, or in his own name and transferred to the child, and paid for by the father, who retained possession of the policies until his death, constitutes, in the absence of clear and convincing proof to the contrary, an advancement, for which the child must account in the settlement of the father's estate.

Cases cited: Yancy *v.* Yancy, 5 Heis., 357; House *v.* Woodard, 5 Cold., 200; Morris *v.* Morris, 9 Heis., 817; Cawthorn *v.* Coppedge, 1 Swan, 487; Johnson *v.* Patterson, 13 Lea, 626; Aden *v.* Aden, 16 Lea, 453; Williams *v.* Williams, 15 Lea, 438; Mason *v.* Holman, 10 Lea, 315; Steele *v.* Frierson, 85 Tenn., 430.

3. SAME. *How valued as an advancement.*

And such insurance is valued to the child who receives it as an advancement, at the net amount due and realized from the policies after the father's death.

Cases cited: Moore *v.* Burrow, 89 Tenn., 104; Burton *v.* Dickinson, 3 Yer., 110; Brown *v.* Dortch, 12 Heis., 740; Andrews *v.* Andrews, 7 Heis., 251; House *v.* Woodard, 5 Cold., 200; Haynes *v.* Jones, 2

\* Reported in 20 L. R. A., with the remark that this case, so far as it touches life insurance as an advancement, is very nearly one of first impression, and no authorities have been found other than those cited in the opinion.—REPORTER.

Cazassa *v.* Cazassa.

Head, 373; O'Neal *v.* Breecheen, 5 Bax., 605; 13 B. Monroe, 528; 27 Md., 693; 14 Ala., 443; 10 S. C., 110 (S. C., 30 Am. R., 37).

FROM SHELBY.

Appeal from Chancery Court. of Shelby County. W. D. BEARD, Ch.

MALONE & MALONE for Complainant.

JULIUS A. TAYLOR for Defendant.

WILKES, J. This bill is filed by the widow and younger son of Frank Cazassa against the elder son of Frank Cazassa and his guardian. The objects of the bill are :

*First.*—To set aside two deeds made by the father in his life-time to the elder son, upon the ground that they were never delivered, and because they are a fraud upon the rights of the widow to dower and homestead in the lands of her deceased husband.

*Second.*—To declare certain insurance moneys, amounting to about $14,000, arising from four different life policies, together with the premiums paid thereon, to be an advancement to the elder son, for which he must account upon the settlement of his father's estate. All of these life policies were taken out by the father, one of them

being originally payable to his estate, and afterwards transferred to the elder son, and the others taken out originally in the name of and for the benefit of the elder son.]

The two deeds were executed by the father on the same day—to wit: May 15, 1889—were written by H. Clay King, then an attorney of the Memphis bar, and acknowledged on the sixteenth day of May, before a Notary Public. One purports to convey certain property to the elder son, situated on De Soto Street, in Memphis, and is an ordinary deed, while the other purports to convey to the same son, a lot on Beale Street, in Memphis, but provides that *"the title to the same is to vest in the donee on a formal future delivery of the deed, no delivery being intended at the present time."*

Neither deed was ever registered, but both remained in the father's possession until his death, in November, 1892.

The father continued in the possession of the property embraced in both deeds until his death, collected the rents, paid the taxes, took out fire insurance, and made leases and rental contracts for the property, in the same way and manner as before the deeds were executed, and always in his own name. The fire policies contained the clause usual in such policies that, if the interest of the assured was less than that of owner in fee, or if he was not sole owner, or if the title was incumbered, then the policies were to be utterly void.

He never mentioned the fact of having made

the deeds to his wife or to any of his friends, nor to the donee, so far as the record shows, and always spoke of the property as his own. It appears, however, that he was quite reticent in regard to all his business matters.

The elder son was about twelve years of age, and the younger about nine years of age, when the deeds were made. The former is shown to be a bright, intelligent boy of good memory. He was not examined as a witness, though tendered by the mother for that purpose.

By the mother and two other ladies it is proved that, after his father's death, the elder son stated, in answer to questions by his mother, that his father had never given him any papers, and had never shown him any.

While the father was in his last sickness, and some three or four days before he died, he said to his wife that he had some old papers in his possession with which he was not satisfied; that he did not wish them to stand or remain good, and that he intended to write a will; that he wished to provide well for her, and spoke feelingly of how faithfully she had nursed him.

After the father's death, the two deeds were found in his iron safe, in a separate envelope, tied up, among some old bills and receipts. His fire insurance policies, which seem to have been his only other valuable papers, were in a separate package.

The Beale Street property is worth about $15,000,

Cazassa *v.* Cazassa.

the DeSoto Street property about $25,000. Besides this, the estate has two farms worth about $5,000, with an incumbrance on one of $2,350. The personal property amounts to $5,000, and the debts against the estate amount to $5,000.

On the trial the Chancellor held that both deeds were invalid and inoperative because never delivered, and set them aside. As to the insurance money, he held that a policy for $5,000 in the Mutual Benefit Life Insurance Company was an advancement, but that the other insurance was not an advancement.

This $5,000 policy was in what is styled an "old line company," while the others were certificates in certain benevolent orders. The former was paid up, and had originally been issued in favor of the father's estate, and subsequently transferred to the eldest son, while the benefit certificates were taken out in the name of the elder son, and for his benefit. The transfer of the paid-up policy and the issuance of the benefit certificates were about the same date as the two deeds.

Both parties have appealed from the decision of the Chancellor, and have assigned errors.

For complainants, it is insisted that the Court should have charged all the insurance and all the premiums paid thereon as an advancement against the elder son, for which he should account in the further settlement of his father's estate.

For defendants, it is insisted that the Court should have held the deeds valid and operative,

37—8 p

Cazassa *v.* Cazassa.

and that the eldest son should not have been charged with any of the money derived from life insurance as an advancement.

The case has been ably argued and very forcibly presented by counsel on both sides.

For defendants it is insisted that the acts done by the father were sufficient to show delivery of the deeds, that both were executed, and, at the same time, that they were acknowledged before a Notary Public; that a manual delivery was not necessary; that with a child of such tender years such delivery was impracticable. It is further urged that, both deeds being executed at the same time, one providing for future delivery as to the Beale Street lot, and the other conveying the DeSoto lots, being silent as to delivery, was a convincing fact that, as to the latter in any event, it was intended the deed should take immediate effect, and as to that there was an actual present delivery.

On the other hand, it is urged with great force that no delivery of either deed was ever, in fact, made, nor was there any intention at any time to make an actual present delivery; that if any intention to deliver ever existed in the mind of the father, that he abandoned it; that he continued in the use of the property just as he did before the deeds were made; that he collected rents, made contracts, took out insurance, paid taxes on the property in his own name, and treated the property as his own, and that the deeds, when

found, were not among his valuable papers, but among his old bills and receipts.

Many authorities bearing upon the question of delivery are cited by both parties, and the case of *Davis* v. *Garrett*, 91 Tenn., 147, is specially urged by defendants as controlling.

In that case it was held that actual manual delivery to an infant of seven years of age was not absolutely necessary, and a formal delivery, under such circumstances, would have been so extremely formal as to be farcical.

That case, however, differs broadly from this, in that the deed in that case was delivered *by the father for registration, was actually registered, and was never again in the father's possession.*

Looking at all the facts disclosed in the record, and the situation and surroundings of the parties, we are of opinion that neither of these deeds was ever delivered, nor was there ever an actual present intent to deliver them.

It would not be reasonable to suppose that the father indended to make a deed to take effect "*in præsenti*" to the DeSoto property, upon which the residence in which he and his family were residing was situate, and the deed to the Beale Street property provides, on its face, for future delivery, and against any vesting of title until such delivery could be made. We can see no evidence of delivery at any date subsequent to the making of the deeds, or of any intention to make such delivery; but the

facts, so far as they go, negative the idea of any delivery.

That the father never mentioned the making of the deeds to his wife, or to any of his friends; that he continued to use the property as before, paying taxes, making rental contracts, and receiving the rents, taking out insurance in his own name; that the deeds, when found, were not among his live and most valuable papers, but among his old bills and receipts—all these facts negative the idea of any delivery, or of any present intention to deliver.

As to the insurance money, a new and novel question is presented: Whether insurance taken out by the father in the name of a child, or taken out in his own name and subsequently transferred to a child, shall be treated as an advancement to that child, for which he must account in the settlement of his father's estate; and, if so treated, then for what amount must such child account?

We have been cited by counsel to but one case bearing upon the question, and it is admitted that no other case can be found. The case cited is *Rickenbacker* v. *Zimmerman*, 10 South Carolina Reports, 110 (reported also in 30 American Reports, 37; and cited in American and English Encyclopedia of Law, Vol. I., page 217). In that case it was held that the value of the insurance at the time the policy was taken out and the first premium paid, together with all premiums subsequently paid, must be treated as an advancement.

In our own books we find nothing directly upon the question. We have a general statute providing for absolute equality in the division of estates, and for the collation of advancements. M. & V. Code, §§ 3280, 3281.

An advancement is defined to be a gift by a parent to a child by anticipation, in whole or in part, of what it is supposed the child will be entitled to on the death of the parent. ] *Yancy* v. *Yancy*, 5 Heis., 357; *House* v. *Woodard*, 5 Cold., 200; *Morris* v. *Morris*, 9 Heis., 817; *Cawthorn* v. *Coppedge*, 1 Swan, 487; and other cases using substantially the same language.

In the South Carolina case referred to, it is said that it would be a difficult matter to frame such a definition of the meaning of the word "advancement" as would cover every possible case, but that certain elements are absolutely essential —that is, the property given must have been a part of the estate of the ancestor which, but for the gift, would pass to the heir or distributee on his death, *or it must be something purchased with the funds of the father in the name of and for the benefit of the child.*

While we would not adopt this as a critically correct definition in all cases, we think there is no error in it, as applied to the facts of this case.

Certainly a parent can purchase property, real or personal, and take title to his child if he chooses, with a view and for the purpose of mak-

ing it an advancement to such child, and it would be no objection to its being so treated that the property thus advanced had not previously belonged to the estate of the father. Property thus acquired may constitute an advancement as well as property previously owned by the father.

In this case the insurance was purchased by the funds of the father. It was an investment of the money paid as premium by him for the benefit of his son; it was the setting apart and investing of that much of his property, which would otherwise have accumulated in other forms and gone to his distributees just as much as if he had invested the same in some stock or bond for the benefit of his child; and if we add the feature that the father should retain the possession of the bond or stock until his death, the analogy would be complete.

It is true the proceeds of a life policy are by statute protected from seizure for the father's debts, but this in nowise bears upon the matter now under consideration.

The premiums being thus invested in the policy, the proceeds of the same are an advancement to the child in the absence of any thing showing that the parent intended it to be a gift and not an advancement.

As a matter of course it is competent for the father to *give* the policy to his child *as a gift,* and not as an advancement, as it would be for him to *give* any other property that he might desire, but in the absence of clear, convincing proof to the

contrary, the property will be treated as an advancement, and not as a gift. ] *Morris* v. *Morris*, 9 Heis., 817; *Johnson* v. *Patterson*, 13 Lea, 626; *Aden* v. *Aden*, 16 Lea, 543; *Williams* v. *Williams*, 15 Lea, 438; *Mason* v. *Holman*, 10 Lea, 315; *Steele* v. *Frierson*, 1 Pick., 430.

[The mere fact that the policy is taken in the name of the son is no more evidence that it was intended as a gift instead of an advancement than would be the placing of title to real or personal property in the name of the son. All advancements are gifts, but there may be a gift that is not an advancement if not so intended when made by the parent.

The next question presented is at what sum the insurance should be charged, treating it as an advancement.

In the South Carolina case cited, it was held that the son should be charged with the value of the policy at the time it was taken out and the first premium paid, together with all premiums subsequently paid added to that value, but without interest. This ruling was, however, based upon the statute of South Carolina relating to advancements, which provides that the property advanced shall be estimated at its value at the ancestor's death, but so that neither the improvement of real estate nor increase of personal property shall enter into the computation.

The rule in Tennessee is that advancements shall be charged at their value *when made.*] *Burton* v.

*Dickinson*, 3 Yer., 112; *Brown* v. *Dortch*, 12 Heis., 740; *Andrews* v. *Andrews*, 7 Heis., 251; *House* v. *Woodard*, 5 Cold., 200.

Under this rule, we think the property should be charged at its value at the time it comes into the possession and beneficial enjoyment of the child to whom it is given.

The idea is correctly set forth in the case of *Hook* v. *Hook*, 13 B. Monroe, 528. In that case, a father conveyed to certain of his children lands and slaves, reserving a life-estate in himself. The Kentucky statute prescribes the same rule that is recognized in Tennessee, that all advancements shall be estimated at their value when made, and the Court construed this to mean that the advancement should be deemed to be made at the time it is completed, by the actual possession and enjoyment of it when the life-estate fell in. See also *Clark* v. *Wilson*, 27 Md., 693; *Wilkes* v. *Green*, 14 Ala., 443.

Substantially the same idea is held in *Moore* v. *Burrow*, 5 Pickle, 104. In that case land was given by parol in 1856, and the donee went into immediate possession. This parol gift was ratified by a conveyance in 1859, and the question was whether the advancement should be valued at the time of the parol gift or when the deed was made, and the Court held that the value at the time of the parol gift, and beneficial enjoyment thereunder, was the proper date. See also *Haynes*

v. *Jones*, 2 Head, 373; *O'Neal* v. *Breecheen*, 5 Bax., 605.

We consider this much the better rule, inasmuch as the child gets no possession or beneficial enjoyment until the father's death. In the meantime, if the policy has been allowed to lapse, the child will not be chargeable with any thing on account of it. Again, it is said that if any thing is charged as an advancement, it should be simply the amount of premium paid, without interest, but the same rule applied to any other property would make amount paid for the property advanced the criterion of value, instead of what it is actually worth or what may be its real outcome.

We are of opinion, therefore, that the eldest son should be charged, as an advancement, with the net amounts received by him upon all the policies after his father's death. We can see no reason why he should not be charged with the amounts received on the certificates in the beneficial orders as well as that upon the old line policy, nor with the amounts received upon the policies not paid up as well as that paid up in the father's life-time. The final proceeds and outcome of each is earned by, and is the result of, the premiums invested by the father out of his own means, which would otherwise, upon his death, have gone to his distributees.

The decree of the Chancellor as to the real estate is affirmed, and, as to the insurance money, is modified as herein indicated, and the cause is

remanded for such further proceedings as may be desired.

The costs of the appeal will be paid by the defendant's guardian out of the trust funds in its hands.