COUCH et al. v. HOOVER.—79 S. W. (2d) 807.

Middle Section. December 8, 1934.

Petition for Certiorari denied by Supreme Court, February 23, 1935.

524

Hancock & Hancock and C. C. Jackson, all of Murfreesboro, for appellants Couch.

James D. Richardson and A. L. Todd, Jr., both of Murfreesboro, for appellee Hoover.

CROWNOVER, J.  This is a suit to recover an one-half undivided interest in a tract of land, and to have the trust instrument declared void, canceled, and removed as a cloud on complainants' title; and the questions involved are whether the instrument is a deed or a will, and, if a deed, was it effectually delivered to the grantee?

H. C. Couch, of Rutherford county, was, in 1927, the owner of a large farm and of a half interest in a smaller farm. His heirs at law were his two sons, J. Clark Couch and Ellis Couch, and a grandson, J. T. Hoover, Jr., a boy about fourteen years of age.

In the spring of 1927 he went to the office of his lawyer, A. L. Todd, Jr., in Murfreesboro, and told him that he wished to make a division of his property; that he wished to execute deeds conveying the large farm to his two sons and the half interest in the smaller farm to his grandson, reserving control of all the property during his lifetime, the interest of the grandson to be conveyed to his said

two sons as trustees during his minority. Mr. Todd drafted two deeds accordingly, also his will leaving the rest of his property to his two sons.

The will reads as follows:

"Will of H. C. Couch.

"I, H. C. Couch, of Rutherford County, Tennessee, being of sound mind, make this my last will and testament, revoking any other wills heretofore made by me.

"Item 1. I appoint my two sons, Ellis Couch and J. Clark Couch, my executors without bond.

"Item 2. After paying all my debts, I give to them all property both real and personal of which I may die seized and possessed.

"Witness my hand and seal at Murfreesboro, Tennessee, this the 6th. day of April, 1927.

"H. C. Couch.

"The above and foregoing last will and testament was this day produced to us by the testator, H. C. Couch, who declared said instrument to be his last will and testament, and we signed the same at his request, in his presence and in the presence of each other, and said testator also signed said instrument in our presence.

"This the 6th day of April, 1927.

"Ewing Smith
"Moore M. Miles."

He executed one deed conveying the large farm to his said two sons.

The deed to trustees for J. T. Hoover, Jr., the grandson, which is the subject of this suit, is as follows:

"State of Tennessee, Rutherford County.

"For and in consideration of the love and affection. I have for my grandson, John Thomas Hoover, Jr., and in consideration of the sum of One Dollar ($1.00) cash in hand paid by Ellis Couch and J. Clark Couch, trustees, receipt of which is hereby acknowledged, I, the undersigned H. C. Couch, a widower, have bargained and sold, and by these presents do transfer and convey unto Ellis Couch and J. Clark Couch, trustees, their successors and assigns, all of my one-half undivided interest in and to that certain tract of land situated in the 22nd civil district of Rutherford County, Tennessee, bounded and described as follows:

"Bounded on the north and west by S. T. Ayers and Bradley's creek; on the south by Will Elrod, and on the east by Brown's Mill road, Charlie Smartt's garden and garage, containing 64 acres more or less; and being the same tract of land conveyed to H. C. Couch and W. R. Elrod, by deed from A. B. Dement and wife dated July 24th., 1920, and recorded in Book 68 page 492 Register's office of Rutherford County, Tennessee.

"To have and to hold, the said undivided interest in said tract or parcel of land, with the appurtenances, estate, title and interest

thereto belonging to the said Ellis Couch and J. Clark Couch, Trustees, or the survivor of them, their successors and assigns upon the following trust and conditions:

"In trust for my grandson, John Thomas Hoover, Jr., his heirs, until he arrives at the age of twenty-one years, at such time to be conveyed to him by said trustees of the survivor of them, or their successors; hereby granting unto said trustees full power and authority to, at any time during the existence of this trust, sell and convey said property by deed of conveyance with covenants of general or special warranty, without the intervention of any court, and to hold or reinvest the proceeds for the use and benefit of said John Thomas Hoover, Jr., the corpus to be paid to him when he arrives at the age of twenty-one years; but it is expressly understood that no purchaser of said land, above described, or any property in which said funds may be reinvested, is required to look to the application of the proceeds, and that the conveyance by said trustees, or the survivor of them, or their successors, shall vest fee simple title in such purchaser discharged from all claims by liability to the said John Thomas Hoover, Jr., or any one claiming by, or through or under him.

"It is expressly understood that this conveyance shall not take effect until the death of the undersigned H. C. Couch, and the full management and control of and income from said property shall remain in the said H. C. Couch during his lifetime.

"After the death of the undersigned, and during the existence of this trust, the management and control of said property shall be vested in said trustees, and out of the income realized therefrom they shall first pay all taxes, upkeep and repairs, the net income, if any, to be paid to or held in trust for the use and benefit of said John Thomas Hoover, Jr., until he arrives at the age of twenty-one years, at which time same, or any remainder thereof not theretofore used for his maintenance and support, is to be paid to him.

"And I do covenant with the said Ellis Couch and J. Clark Couch, trustees, that I am lawfully seized and possessed of said land in fee simple, that is, a one-half undivided interest therein; have a good right to convey it, and the same is unencumbered.

"And I further covenant and bind myself, my heirs and representatives, to warrant and forever defend the title to said land to the said trustees, their successors and assigns, against the lawful claims of all persons whomsoever.

"Witness my hand, this the 8th day of April, 1927.

"H. C. Couch."

(Here follows regular acknowledgment dated April 7, 1927.)

The other one-half undivided interest in this property was owned by W. R. Elrod.

After the deeds were written and properly acknowledged and the

will witnessed, they were turned over to Todd's secretary and put in his safe.

H. C. Couch died in June, 1929. After his death his two sons went to the office of A. L. Todd, Jr., and received the deeds and will, which they carried to the courthouse, where they had the deeds registered and the will probated. J. Clark Couch and Ellis Couch assumed the duties of trustees of the property conveyed to J. T. Hoover, Jr., and collected the income of same and deposited it in a bank to his account.

J. T. Hoover, Jr., died intestate on September 28, 1932. He left surviving him as his sole heir at law his father, J. T. Hoover, Sr., who claimed title to said property as his heir.

Whereupon, J. Clark Couch and Ellis Couch contended that the instrument in the form of a deed was not a deed but a will to take effect when the boy reached the age of twenty-one; that the boy having died before reaching twenty-one, the property reverted to the estate of H. C. Couch and would pass under his will to them.

The original bill in this cause was filed by J. Clark Couch and Ellis Court against J. T. Hoover, Sr. The bill alleged that J. T. Hoover, Sr., is setting up claim to said one-half interest in said farm as the sole heir at law of said J. T. Hoover, Jr., deceased; that said instrument undertaking to convey said property to J. T. Hoover, Jr., is not a deed, but was intended as a will, but not being properly attested it is an invalid will and of no effect. The bill further alleges that the instrument provides that it is to take effect after the death of said H. C. Couch, therefore it is invalid as a deed but is a will; that the instrument was not delivered, therefore it was invalid as a deed; that there was an attempted delivery to a third person for J. T. Hoover, Jr., but the delivery was not effective because the grantor (H. C. Couch) had not parted with dominion and control over said deed and could have recalled it at any time he wished. The bill prayed that the trust instrument be declared null and void and canceled and removed as a cloud upon complainants' title to said land and that complainants be decreed to be the owners in fee simple of same and be awarded possession of same.

Defendant J. T. Hoover answered and alleged that he was the sole heir at law of said J. T. Hoover, Jr., and is entitled to said property, and denied that said instrument was intended as a will, but alleged that it is a valid deed, duly acknowledged and delivered to A. L. Todd, Jr., to be delivered at the death of the grantor. He further alleged that complainants are estopped to deny the validity of said deed by reason of the fact that they assumed the duties of trustees under said deed and managed and controlled said property for over two years until the death of J. T. Hoover, Jr.

The chancellor held that the instrument was a valid deed, that

it had been delivered, and that it conveyed a present interest in said land to the said trustees for said beneficiary.

Complainants excepted to said decree and appealed to this court and have assigned errors, which raise only two propositions:

First. Is the instrument a deed and does it convey a present estate?

Second. Was the deed delivered?

1. Complainants' first contention is that the instrument provides that it is to take effect after the death of H. C. Couch, therefore it is testamentary in character; and that a deed conveying a future interest would be invalid.

The instrument states that it is executed for love and affection, and that: "It is expressly understood that this conveyance shall not take effect until the death of the undersigned, H. C. Couch, and the full management and control of the income from said property shall remain in the said H. C. Couch during his lifetime." The last half of the sentence states that he reserves the management and control of the *income* from said property during his lifetime.

"An instrument in the form of a deed reciting that in consideration of love and affection the author conveys to certain parties all his title, etc., to a tract of land, but providing that he is to hold in his own name, and have all the rents of the tract of land until his death, then to be divided between the donees, is a deed conveying a present interest, and not a testamentary paper." Jones v. Hicks, 2 Shan. Cas., 635.

"If the vested right to the present or future enjoyment of some specific thing then owned by the donor, passes to a designated person, the instrument operates in praesenti, and is a deed; and the postponement of the possession and beneficial enjoyment until the death of the donor, does not make it a will." Sizer's Pritchard on Wills & Executors, sec. 18; Swails v. Bushart, 2 Head, 561; Wall's Adm'r v. Ward, 2 Swan, 648; Caines v. Marley, 2 Yerg., 582; Cains' Lessee v. Jones, 5 Yerg., 249, 250; Swiney v. Swiney, 14 Lea, 316.

"A paper in the form of a deed, duly acknowledged and legally delivered, giving certain designated land to a certain person at the death of the giver, is an irrevocable deed, and not a testamentary paper. It conveys a present or vested remainder estate to be enjoyed after the death of the grantor. Johnson v. Mitchell, 1 Humph. (20 Tenn.), 168; Wall's Adm'r v. Ward, 2 Swan (32 Tenn.), 648; Fry v. Taylor, 1 Head (38 Tenn.), 594; Swails v. Bushart, 2 Head (39 Tenn.), 561; Swiney v. Swiney, 14 Lea (82 Tenn.), 316; Davis v. Garrett, 91 Tenn. (7 Pick.), 147, 18 S. W., 113; Cazassa v. Cazassa, 92 Tenn. (8 Pick.), 573, 22 S. W., 560, 20 L. R. A., 178, 36 Am. St. Rep., 112; Johnson v. Johnson, 103 Tenn. (19 Pick.), 32, 52 S. W., 814; Ellis v. Pearson, 104 Tenn. (20 Pick.), 591, 58 S. W., 318; Jones v. Hicks, 2 Shan. Cas., 635; Stamper v. Venable, 117 Tenn. (9 Cates), 557, 97 S. W., 812; Scott v. Union & Planters' Bank & Trust

Co., 123 Tenn. (15 Cates), 258, 130 S. W., 757." Williams' Tennessee Code, seventh note under section 8089.

"The grantor's intention to confer a present title will be carried into effect when the delivery is sufficient to put the deed within the control of the grantee or his agent, though the deed is not to take effect in giving the grantee possession of the land until after the grantor's death. In such case it will be deemed a present grant of a future interest." 4 Thompson on Real Property, 991, sec. 3911; 68 C. J., 613, sec. 235.

In Burchett v. Burchett, 237 Ky., 411, 35 S. W. (2d), 557, 558, Burchett executed a deed to his wife for the farm on which they lived, and delivered it to his attorney, S. G. Smith, with instructions to deliver it to his wife at his death. Burchett died and after his death Smith delivered the deed to Mrs. Burchett and she had it recorded. Thereupon Burchett's children by a former marriage brought suit against her to recover the land and set the deed aside on the ground that there was no delivery of the deed, as the deed contained a clause providing that Burchett should have control of the land during his life. The Court of Appeals, in upholding the deed, said:

"The reservation of a life estate by the grantor was meaningless, unless he intended a present interest to vest in the grantees. He thereby necessarily recognized the grantees as the owners of the property, subject to the life estate."

The deed, above set out, is dated and was acknowledged April 8, 1927. It states: "I, the undersigned, . . . have bargained and sold, and by these presents do transfer and convey . . . And I do covenant that I am lawfully seized." The deed on its face conveys a present title. In Wheeler v. Loesch, 51 Ind. App., 262, 99 N. E., 502, the court held that an intention to convey present title was shown by the use of the words "conveys and warrants" in the deeds, and the delivery of the deeds to a third party to hold until the death of the grantor, then to be delivered to the grantees, passed dominion out of the grantor's hands, since no provision was made for recall of the deeds; and there was a sufficient delivery to pass title to the grantees, and title vested in the grantees at the time of delivery to the third party.

"The original tendency was towards holding that papers indicating an intention to postpone enjoyment by the persons claiming to be grantees till after the death of the persons executing the papers should be classed as wills. This tendency in time yielded to another, namely, that it was the sounder policy in a case of doubt to declare that the instrument was a deed and thus make it effectual, when holding it to be testamentary would, for want of the requisite number of witnesses, render it nugatory. The true test, of course, is the intention of the maker, which is to be gathered from the terms of

the paper. . . . Why should even the most ignorant man adopt the form of a deed if he intended to make a will? Almost any person, however illiterate or uninformed, would, if he desired to execute a real will, adopt for expressing his purpose language altogether unsuited for a present conveyance. Where the form of a deed is actually employed, such phrases as 'after my death,' 'vest at my death,' 'take effect at my death,' and the like, may well be construed as merely designed to postpone possession or enjoyment by the grantee till after the death of the grantor.'' West v. Wright, 115 Ga., 277, 41 S. E., 602; Nolan v. Otney, 75 Kan., 311, 89 Pac., 690, 691, 9 L. R. A. (N. S.), 317, 319.

''The syllabus of the case last cited (West v. Wright, 115 Ga., 277, 41 S. E., 602) reads: 'An instrument attested as a deed, and in all respects in the form of a deed, should though it contains the words, ''This deed to take effect at my death,'' be treated, not as a will, but as a conveyance passing title in praesenti, with right of possession postponed till the death of the maker.' The late case of Hunt v. Hunt, 119 Ky., 39, 82 S. W., 998, 68 L. R. A., 180 (7 Ann. Cas., 788), after reviewing the authorities in some detail, concludes: 'The object of all construction is to arrive at the intention of the maker of the instrument. In doing this, all parts of the instrument must be considered, and in a deed, in case of doubt, it must be resolved against the grantor, for he selects his own language. While the instrument in question contains the words that it is not to take effect until the death of the grantors, it also contains the words, ''do hereby sell and convey,'' ''to have and to hold,'' and ''said party of the first part hereby covenants with the said party of the second part that he will warrant the title hereby conveyed.'' These words aptly convey a present estate, and it is not presumed that one part of the deed was intended to conflict with another. As it is clear that, as to S. E. Hunt, only the enjoyment of the property was postponed until her death, we conclude that, giving some effect to all parts of the deed, its proper construction is that the grantee takes a present estate vesting at the time of its delivery, but taking effect in possession at the death of the father and mother.' The syllabus reads: 'A present estate vesting at the time of delivery of the deed, but taking effect in possession at the death of the father and mother, is conveyed by a grant by the owner of land and his wife to their child in an instrument authenticated as a deed and containing words of present grant and covenants of warranty, although it provides that ''this deed is not to take effect until the death of'' the grantors.' '' Nolan v. Otney, supra.

█ In view of these authorities we are of the opinion that the instrument is a deed, conveys a present interest, and reserves a life estate in the grantor.

2. Was the deed delivered?

Todd testified that H. C. Couch came to his office and told him that he wanted to divide up his property; that he wanted to deed this property to his grandson; that "he said he wanted to reserved as he called it the control of it during his lifetime;" that he wanted his two sons to be trustees for the boy during his minority; that when he had written the deeds Couch told him he wanted to write a will leaving the balance of his property at his death to Ellis and Clark; that the papers were executed and put in the safe, where they remained until after Couch's death, when they were delivered to the boys. Todd further testified that if Mr. Couch had asked that the deeds be given back to him he would probably have delivered them to him, and further:

"It never occurred to me that he would revoke it. He acknowledged it and left it with me. If those trustees had come and wanted it I would have given it to them. . . .

"He told me how he wanted it and I undertook to express it in the instrument."

Todd testified that Mr. Couch made no reservations when leaving the deeds with him.

Couch never attempted to exercise any control over the deed after the delivery to Todd.

F. W. Auberry testified that H. C. Couch told him about a month before he died that "he had made his grandson that place. . . . He had made that to that boy and he fixed everything where the Hoovers wouldn't get it."

W. R. Elrod testified as follows:

"He (H. C. Couch) told me he had it fixed so I could buy it if I wanted to—his one half interest. . . . Said he had fixed it in the hands of his boys. Said he fixed it so they could sell and make me a title to it. . . . Said he had fixed it to J. T. Hoover, his grandson; meant for him to get it. . . . Said he had already fixed it."

Clark and Ellis Couch undertake to show that it was their father's intention to make a will leaving this property to the boy when he reached the age of twenty-one years. But when they received the deed they had it recorded and assumed the duties of trustees. They admitted that if the boy had lived they would never have attacked the deed.

Where the deed is still in possession of grantor or his agent or attorney, there is a presumption that it has not been delivered unless he has retained an interest thereunder, 4 Ency. of Evidence, 161, 162, or where the grantee is an infant, 4 Ency. of Evidence, 167, 168; Davis v. Garrett, 91 Tenn., 147, 18 S. W., 113.

Delivery is a matter of intention, and intention is the test. McEwen & Tompkins v. Bamberger, 71 Tenn. (3 Lea), 576, 581; Scott v. Union & Planters' Bank & Trust Co., 123 Tenn., 258, 277, 130

S. W., 757; Swiney v. Swiney, 14 Lea (82 Tenn.), 316, 320; Ellis v. Pearson, 104 Tenn., 591, 593, 58 S. W., 318; Johnson v. Johnson, 103 Tenn., 32, 52 S. W., 814.

Delivery is a matter of intention and the fact may be inferred from circumstances. 4 Ency. of Evidence, 157; Thompson v. Jones, 38 Tenn. (1 Head), 574, 576; Farrar v. Bridges, 24 Tenn. (5 Humph.), 411, 42 Am. Dec., 439; Nichol v. Davidson County, 3 Tenn. Ch., 547.

The grantor's declarations both prior to and subsequent to the execution of the deed are admissible as declarations against interest. 4 Ency. of Evidence, 169-171; Toms v. Owen (C. C.), 52 Fed., 417.

The acts of the parties in relation to the land at the time of and subsequent to the execution of the deed are competent evidence of both delivery and acceptance. 4 Ency. of Evidence, 172.

"Actual possession or acceptance of a deed is not essential to its efficacy, but the intention of the grantor that what was done should operate as a delivery, and the intent of the grantee to accept the benefit, will suffice; and the intent of either or both may be implied from subsequent admissions, conduct, or circumstances." Nichol v. County of Davidson, 3 Tenn. Ch., 547; McEwen v. Troost, 33 Tenn. (1 Sneed), 186; Goodman v. Skelton, 2 Tenn. Ch. App., 283, 289.

"It is not controverted, and is everywhere held, that delivery is necessary to a deed. 4 Kent, 454. It may be by the express words, or the acts of the party. If the parties evince, by what is done, in any clear and unequivocal manner, the intention of delivering the deed, it is sufficient. Addison on Con., 7." Thompson v. Jones, 1 Head (38 Tenn.), 574, 576.

In the case of Thompson v. Jones, supra, the grantor had the deed recorded and delivered it to a third person. The court charged the jury that the facts of this case amounted to a prima facie case of a valid delivery and acceptance, and would pass the title, unless rebutted by proof that such was not the intention. The Supreme Court said this was a correct statement of the law.

"Where the circumstances indicate that it was the intention of the parties for the deed to take immediate effect, the delivery will be regarded as complete, though the actual custody remain with the grantor." Ledgerwood v. Gault, 70 Tenn. (2 Lea), 643; Farrar v. Bridges, 5 Humph., 411, 42 Am. Dec., 439; McEwen v. Troost, 1 Sneed, 186; 4 Kent, 505; Goodman v. Skelton, 2 Tenn. Ch. App., 283, 290.

"If no condition be annexed, if nothing remains to be performed in order to give effect to the instrument, its signing, sealing and attestation as a valid instrument between the parties, will make it complete and effectual, although the instrument may be left in the

possession of the bargainor or grantor." Farrar v. Bridges, 5 Humph., 411, 412, 42 Am. Dec., 439.

But a delivery, to be valid, must be such as deprives the grantor of the power to recall the deed. Brevard v. Neely, 34 Tenn. (2 Sneed), 164, 170; Kirkman v. Bank of America, 42 Tenn. (2 Cold.), 397; Traders' Nat. Bank v. First Nat. Bank, 142 Tenn., 229, 234, 217 S. W., 977, 9 A. L. R., 382; Davis v. Cross, 14 Lea, 637, 52 Am. Rep., 177.

The delivery of a deed is complete only when the grantor has put it beyond his power to revoke or reclaim it. 4 Thompson on Real Property, 983, sec. 3905; Brevard v. Neely, 2 Sneed, 164; Cazassa v. Cazassa, 92 Tenn., 573, 22 S. W., 560, 20 L. R. A., 178, 36 Am. St. Rep., 112.

"A grantor may deliver a deed to a third person to hold until the grantor's death and then to deliver it to the grantee. Such a delivery is perfectly valid, but the deed must be left with the depositary without a reservation by the grantor, express or implied, of the right to retake it or otherwise control its use." 9 Amer. & Eng. Ency. of Law (2 Ed.), 157; Davis v. Cross, supra.

To constitute a delivery the deed must pass under the control of the grantee, or some other person for him with the consent of the grantor. 4 Thompson on Real Property, 987, sec. 3907; Martin v. Ramsey, 5 Humph., 349; Cazassa v. Cazassa, 92 Tenn., 573, 22 S. W., 560, 20 L. R. A., 178, 36 Am. St. Rep., 112.

In Goodrum v. Carroll, 21 Tenn. (2 Humph.), 490, 492, 37 Am. Dec., 564, it was said by our Supreme Court that:

"If a deed be delivered to a stranger for the use of the obligee, and he afterwards receive it, it is good from the time of the delivery to the stranger. Sheppard's Touchstone, 57, 58; Coke, 225, note w."

"The question of delivery is one of intention, and the rule is that a delivery is complete when there is an intention manifested on the part of the grantor to make the instrument his deed. 'The doctrine seems to be settled beyond reasonable doubt,' remarks Justice Atwater, 'that where a party executes and acknowledged a deed, and afterwards, either by acts or words, expresses his will that the same is for the use of the grantee, especially where the assent of the grantee appears to the transaction, it shall be sufficient to convey the estate, although the deed remains in the hands of the grantor. . . . The main thing which the law looks at is whether the grantor indicates his will that the instrument should pass into the possession of the grantee; and if that will is manifest, then the conveyance inures as a valid grant, although, as above stated, the deed never comes into the hands of the grantee.' A deed does not become operative until it is delivered with the intent that it shall become effective as a conveyance. Whether such intent actually existed is a question of fact to be determined by the circumstances of the case, and cannot

in the majority of instances be declared as a matter of law. If the grantor's conduct and all the circumstances connected with the transaction are such as to indicate that it was the intention of the grantor to give effect and operation to the deed and to relinquish all power and dominion over it, the law will effectuate the deed in accordance with this intention, and will construe the delivery as valid. No particular formality is required to render the delivery valid as the intention of the grantor is the element that controls, but this intention should be manifested by words or acts or both. . . . In a late case the court states that it is settled law 'that the fact of delivery rests in intention, and it is to be collected from all the acts and declarations of the parties, having relation to it.' . . . It is sufficient if it appears by the acts or words or both of the grantor that a delivery was intended. . . . Anything clearly manifesting an intent that the deed shall become operative is sufficient. . . . As the question of delivery must rest to a large degree on the intention of the parties, it is generally a mixed question of law and fact whether a deed has been delivered or not." 1 Devlin on Real Estate (3 Ed.), 385-390, sec. 262.

"The delivery of a deed by the grantor to a third person to be held by him and delivered to the grantee upon the grantor's death will operate as a valid delivery, where there is no reservation on the part of the latter of any control over the instrument, and under such circumstances it is usually held that the deed takes effect from the first delivery. If, however, a power to recall the deed is reserved by the grantor, there is, according to the great weight of authority, no effectual delivery and the deed cannot take effect, although in a few cases a power upon the part of the grantor to recall the deed has been held not to invalidate the delivery, where such power was not exercised during the lifetime of the grantor. As in other forms of delivery, the intention of the grantor, as evidenced by the circumstances surrounding the transaction, affords the true test." 18 C. J., 208-210, sec. 114.

The fact that the depositary of a deed to be delivered after the death of the grantor was uncertain as to the legal effect of the delivery to him of the deed, and that he would have returned it to the grantor in the event that the latter had demanded it, is immaterial, and will not invalidate the deed, as the court is concerned only with what the depositary had the right to do with the deed, and his understanding of the effect of the transaction would be important only as bearing upon the value of his testimony as to what was actually said and done.

"The fact that the depositary understood that the deed was to be left with him only for safe-keeping, and that he did not hesitate to return the deed to the grantor when the latter called for it, did not make the delivery ineffective. Johnson v. Cooper (1927); 123 Kan.,

487, 255 Pac., 1112.'' 52 A. L. R., 1247; 1 Devlin on Real Estate (3d Ed.), 464, sec. 281a.

''Delivery of a deed may be inferred from acts without words, or from words without acts, or from both combined.'' Hacker v. Deaton, 200 Ky., 383, 254 S. W., 1055.

In Nuckols v. Stone, 120 Ky., 631, 87 S. W., 799, 802, Dudley Dedman executed a deed conveying land to Nuckols and delivered it to Gibbons to be delivered to Nuckols after Dedman's death. The deed contained the following clause: ''Grantor retains said property and the use, possession and occupation and entire control of same during his natural life.'' Dedman and Gibbons entered into a written contract by which it was agreed that Dedman might recall the deed whenever he wished. Dedman died without having demanded the deed or canceling it. The court, holding that the deed was delivered, said:

''The reservation of a life estate by the grantor was meaningless, unless he intended a present interest to vest in the grantees. He thereby necessarily recognized the grantees as the owners of the property, subject to the life estate. The right which he also reseved to cancel the deed in a certain way is not inconsistent with this, but rather gives force to it, for, if the deed was subject to his general control, and was held by Gibbons merely as his agent, then there was no need that a special mode of reclaiming the deed or canceling it should be reserved by him. When the two papers are taken together, their fair meaning is that the deed was to be operative unless defeated by him in the manner pointed out. The estate which was thus granted, and which then vested in the grantees, not having been defeated in the manner provided, became absolute. A cardinal rule of construction is that an instrument, if it can be fairly done, will be so construed as to give it some operation rather than so as to make it abortive. In this case the grantor acknowledged the deed. He had a carefully worded instrument drawn by an attorney, and this instrument was signed by him, the grantee, and the attorney. We cannot presume that he intended to do a vain thing, if the language of the instrument is fairly capable of a construction that will give it effect. If he had intended no estate to vest in the grantees, there was no reason for his reserving a life estate, and all he need have said in the other paper was that Gibbons was to hold the deed subject to his orders.''

Where a deed, fully executed and so drawn as to convey a present title, is deposited by the grantor with a third person, with directions to deliver it to the grantee after the death of the grantor, and the grantor reserves no dominion or control over the deed, the instrument is not an attempted testamentary disposition, but is effective as a conveyance of the title as of the date when the deed is deposited. 52 A. L. R., 1251.

In Traders' Nat. Bank v. First Nat. Bank, 142 Tenn., 229, 234, 217 S. W., 977, 978, 9 A. L. R., 382, Judge Green said:

"The test of delivery, as noted in our cases, is the power of the grantor of a deed or maker of a note to recall the same. Has he parted with dominion and control over it? If so, there has been a delivery. Brevard v. Neely, 2 Sneed, 164; Kirkman v. Bank, supra (2 Cold., 397)."

After reviewing the above authorities, we have arrived at the conclusion that the instrument was a deed, and was duly executed and delivered, and is therefore valid. It appears that H. C. Couch went to his lawyer's office and told him that he wanted to make a division of his property and have deeds written. The deeds were executed and left at his lawyer's office. He afterwards told his friends that he "had made his grandson the place. Had made it to that boy, and had fixed everything," etc. He told W. R. Elrod, who owned an undivided half interest in the farm, that he "had fixed it so that he could buy it if he wanted to." "He fixed it in the hands of his boys. Said he fixed it so they could sell and make a title to it. Said he fixed it to John Thomas Hoover, his grandson; meant for him to get it. Said he had already fixed it."

We don't think the complainants have told all they know about the execution of the deeds. They say they didn't know anything about the execution of the deeds and will until after their father's death, but Todd said they came to his office two or three times and asked about the deeds before they were executed, and that he told them afterwards that he had executed the deeds and the will; and immediately after their father's death they again went to Todd's office, obtained the deeds and the will, had same registered and probated, and took possession of the property and proceeded to collect the rents of that place and deposited the proceeds in the bank to the credit of John Thomas Hoover, Jr. The grantor expressed himself freely to others about the execution of the deeds, and we see no reason why he should withhold information from his sons, who were anxious to know. We can look to the acts and declarations of the grantor both before and after the execution of the deeds, and to acts of the grantees in relation to the land subsequent to the execution of the deed; hence, we think the deed was properly executed and delivered. It results that all the assignments of errors are overruled and the bill is dismissed. The cost of the cause including the cost of the appeal is decreed against complainants and the sureties on the prosecution and the appeal bonds.

Faw, P. J, and DeWitt, J., concur.