# CARMODY v. TRUSTEES OF PRESBYTERIAN CHURCH et al.—203 S. W. (2d) 176.

Eastern Section. March 16, 1947.

Petition for Certiorari denied by Supreme Court, May 31, 1947

E. M. Woolsey, of Bristol, for appellant.

R. C. Campbell, of Elizabethton, for appellees.

McAMIS, J. This is a suit to set aside on specific grounds to be hereinafter considered a deed executed by Miss Fannie Atwater on January 9, 1945 to the Trustees of the First Presbyterian Church of Elizabethton. Complainant, a second cousin of the grantor, is a beneficiary under the will of Miss Atwater executed January 13,

1945 by which Miss Atwater attempted to devise the same property to complainant. The Chancellor filed a clear and comprehensive finding of facts and determined each issue against the complainant, dismissing the bill. Complainant appeals.

The bill charges that the deed is invalid because (1) it was acknowledged on January 8, 1945, and appears not to have been executed until January 9, 1945, (2) because the maker or grantor was mentally incompetent, (3) because the deed provides that title should not vest until after the grantor's death,. (4) because of fraud, duress and undue influence exerted by the grantee, and (5) because of lack of a valid consideration.

At the time of her death, on February 16, 1945, the grantor, Miss Atwater, was 75 years of age. She was the daughter of a Presbyterian minister who predeceased the daughter by many years. Following the death of her father, Miss Atwater received a pension from the Board of Pensions of the Presbyterian Church. She also received financial assistance from the local Church at Elizabethton for many years and repeatedly stated that she intended to leave her property to the Church. This appears without dispute. The property covered by the purported deed consists of the house where Miss Atwater resided, together with furniture and personal property located in the residence. Other personal property and money presumably will pass under the will.

The record reveals that Miss Atwater was a woman of intelligence and well educated. She seems to have been rather strong willed and not easily persuaded. She lived alone for many years and doubtless became somewhat eccentric but there is no suggestion that she was of unsound mind until she became ill during the first days of January, 1945. The exact date when she became

ill is the one sharply controverted issue in the case. Under the proof discussed in a portion of this opinion not included in the published opinion we hold that she was of sound mind when the deed was executed.

██ We think there is no merit in the contention that the deed was filled in after it was acknowledged. This insistence seems to be principally based upon the statement by Mrs. Hampton that she "made" the deed at a date different from that appearing in its caption. Mrs. Hampton seems to have referred to typing the deed when she used the term "made," saying that she began working on the deed several months before it was executed. She positively testified that the deed was acknowledged after it was executed and that the fact that the deed appears to have been executed on the 9th was a typographical error. We think all of this is wholly immaterial. The undisputed evidence by highly credible and disinterested witnesses shows that the deed was executed on the 8th and it makes no difference whether it was ever acknowledged. Acknowledgment is only a necessary prerequisite to registration. It adds nothing to the validity of the deed as between the grantee and those claiming under the grantor. There is no evidence that the deed was filled in after it was executed and all of the proof shows that it was not.

██ For the same reason, the contention that the deed is invalid because of a lack of consideration is without merit. At the time of the execution of the deed, as we have seen, the grantor was of sound mind. She was fully conscious of what she was doing and, according to the evidence, either made a gift of the property to the Church or conveyed it in recognition of the financial assistance she had theretofore received from the Church and its various organizations. She had a right to make

the conveyance for either or both reasons. To hold that a deed should be set aside under such circumstances for lack of consideration would be to hold that real estate cannot be the subject of a voluntary gift. The delivery of the deed completed the gift and it became irrevocable. However, we concur in the view expressed by the learned Chancellor that the financial assistance theretofore received by the grantor furnished an adequate consideration.

There is no evidence of fraud or duress and we do not understand this ground of attack is seriously relied upon. In any case, as we find the facts, the grantor fully understood what she was doing and conveyed the property of her own free will and accord. Her expressions, made after her relatives arrived that she had not conveyed the property, may be attributed to a change of mind or, as is often the case, to a desire to avoid a rupture of the friendly relations existing between her and her relatives.

This brings us to the final contention that the deed is testamentary in character and not a conveyance which took effect upon delivery of the deed. We quote the pertinent provisions of the deed: "However, as part of the consideration of this conveyance the said parties of the first part, Fannie Atwater, does hereby retain and reserve a lifetime estate in and to the real estate herein conveyed and described; and that the said parties of the first part shall control the said real estate and shall occupy same and receive the rental from same, and control same, and receive benefits from the same as long as she lives. In other words the said parties of the second part does not take title or possession in and to the said real estate and personal possessions such as furniture or

whatever may be in the house until after the death of the party of the first part.''

■■■■ The Chancellor aptly dealt with this question as follows: ''There was no possibility of question of grantor's intent until the draftsman undertook to explain and elaborate and use the word 'title' in a context of postponement until grantor's death. It is noted that the draftsman was a layman, not a lawyer, and when she used an isolated technical term the meaning of which is at complete variance with the plain and fully expressed intent of the grantor it can and should be ignored. This is in accord with the prime rule of ascertaining and following, where possible, the intent of the maker. It likewise conforms to the rule of construction favoring the vesting of estates, and giving effect to instruments. To adopt the interpretation urged by complainant might make the instrument one of testamentary effect, and it would fail as a will. The whole surroundings and history of the transaction speak deed intent. The instrument was in the form of a deed, reserved a life estate, was acknowledged and delivered (none of which would fit with a will).'' (We fully concur in this finding and holding of the Chancellor.

The cases of Couch v. Hoover, 18 Tenn. App. 523, 79 S. W. (2d) 807, and Miller v. Proctor, 24 Tenn. App. 439, 145 S. W. (2d) 807, are cited by complainant as supporting her contention that the instrument under attack is invalid because the intention of the maker was that it was not to take effect until after the death of the maker. We think neither of these cases supports complainant's insistence. On the contrary, we think they support the view adopted by the Chancellor.

In Couch v. Hoover, supra, the deed, as in this case, contained an express provision that it was not to take

effect until the death of the maker. Citing numerous authorities, the Court held the instrument operative as a deed in accord with the intention of the maker as gathered from the entire instrument considered as a whole. The language in the deed here involved is even more favorable to the grantee as will be seen upon analysis of the language quoted. Miller v. Proctor, supra, mainly involved the questions of delivery and confidential relationship. That case is not in point here. As directly supporting the decree of the Chancellor see Calloway v. Witt et al., 21 Tenn. App. 74, 105 S. W. (2d) 123.

Affirmed, with costs.

Hale and Burnett, JJ, concur.