LESLIE WADE OTTINGER et al. v. HARRY BROWN, Executor, et al.

HARRY L. BROWN, Executor, et al. v. LINDY E. OTTINGER et al. —306 S. W. (2d) 5.

Eastern Section.   May 8, 1957.

Petition for Certiorari denied by Supreme Court October 4, 1957.

Leon E. Easterly and Thomas G. Hull, Greeneville, for appellant.

Swingle, Hardin & Armitage, Greeneville, for appellees.

McAMIS, P. J. These two suits involving the title to a farm in Greene County were consolidated and tried by the Chancellor on depositions. The first suit was instituted by Leslie Wade Ottinger, Lindy Ottinger and Sara Ottinger Black against their father, Illey M. Ottinger, and Harry Brown, executor under the will of Mrs. Belle Ottinger, grandmother of complainants and mother of defendant, Illey M. Ottinger. A few days after the filing of this suit, Harry Brown, executor, and

Illey M. Ottinger filed suit against the complainants in the first suit charging that the deed from Mrs. Belle Ottinger under which they claim had never been delivered. The bill sought an injunction against interference in the administration of the estate and other relief.

The question involved in both suits is the delivery of a deed executed and acknowledged by Mrs. Ottinger on October 21, 1942, and, on the same date, placed by someone with the Register of Deeds for Greene County for registration. The deed purports to convey the property in question to complainants in the first suit subject to a life estate reserved by the grantor. Illey M. Ottinger claims under a will executed by Mrs. Ottinger on December 5, 1947, reciting that the deed of 1942 had never been delivered and that it was never the intention of the testatrix to deliver it and undertaking to devise the same property to Illey M. Ottinger. The deed remained of record until Mrs. Ottinger's death in 1953 at the age of about 83.

It is the contention of defendant, Illey M. Ottinger, that his mother executed the deed to his children, herein called complainants, because his wife Eileen Ottinger, complainants' mother, was threatening to sue him for divorce and involve his interest in the estate acquired under the will of his father which Mrs. Ottinger had purchased at a court sale in a proceeding instituted by his creditors. He also insists that the deed was inadvertently delivered to the Register of Deeds by Mr. Kilgo, the attorney who drew it, contrary to the instructions of Mrs. Ottinger. Complainants insist, on the other hand, that defendant had deserted them and their mother and, at the time of the execution of the deed to them, his whereabouts were

unknown to the grantor, Mrs. Ottinger, and that she believed him to be dead.

The Chancellor found that the registration of the deed had not been satisfactorily explained and that "the placing of the record of the deed, together with surrounding circumstances, both before and after registration, constituted such a delivery of the deed so as to effectively convey title thereunder to the grantees named therein." We agree with the Chancellor upon the proof and circumstances hereinafter outlined.

Prior to the death of defendant's father, in 1938, title to the farm in question stood in the father's name. He had two children, defendant and a daughter Alfreda who died leaving as her sole heir at law, the defendant, Joyce Grimes Goodman. By his will he divided the farm between his two children subject to the life estate of Mrs. Ottinger, the grantor in the deed here involved. In the 1930's domestic difficulties developed between defendant and complainants' mother and he became involved in debt. Apparently, some of his debts were paid by advancements from his mother and, in 1941, she bid in his reversionary interest in the farm acquired under the will of his father in the creditor's suit above mentioned. On December 2, 1936, defendant's wife instituted suit for divorce but the suit was withdrawn upon the payment of certain sums by defendant's mother. There is evidence that defendant's wife threatened to reinstitute suit for divorce after the death of defendant's father. Defendant coud not be located when his father died and did not attend the funeral. The evidence is in conflict as to whether he visited his mother in Greene County between that date and the date of the deed. Perhaps, the weight

of the proof is to the effect that, during this period, she did not know where he was and feared that he had died.

At the date of the execution of the deed, Mrs. Ottinger was a rheumatic cripple. She was brought to the office of Mr. Kilgo by a neighbor and friend, John Kiker. Mr. Kiker testified that he advised her on legal matters and that when she told him she had willed the property to complainants he advised her to "deed" it to them; that he remembered Mr. Kilgo coming to the car to take her acknowledgment and also remembered that she talked to the Register of Deeds in the car; that she told him many times thereafter that she had "deeded it to them, that it was all fixed up * * *."

A number of other witnesses who are without any personal interest in the suit testified to numerous statements by Mrs. Ottinger over the years that complainants were landowners; that she had deeded the farm to them and they should learn how to farm; that defendant had sufficient property in California and did not need the farm and, at least, one of them testified that she said she had made them a deed and *registered* it—that it was "air tight" or words to that effect. These children had spent considerable time in her home or on her farm and she seems to have been very fond of them. They were all minors living with their mother in Oregon and, although Mrs. Ottinger told them of the deed, they had never seen it prior to her death.

We go back now to events in 1947. In the fall of that year, defendant returned to Greene County from his home in California and Mrs. Ottinger returned with him to California in December, 1947. The proof shows that about this time Mrs. Ottinger called at the office of Kilgo

& Armstrong and requested the return of the deed. After searching for it for some time, it seems, despite the fact that five years had passed, Mr. Kilgo found it among some papers lying on his desk. Mr. Armstrong says when he handed it to Mrs. Ottinger she upbraided Mr. Kilgo for having placed it of record. She then had Mr. Armstrong draw the will here in question in which she undertook to "revoke" the deed. The deed and will were found among her valuable papers after her death. Mr. Kilgo died before these suits were instituted.

No authority is cited for the insistence of defendant that the self serving declarations of Mrs. Ottinger to her attorney and set forth in the will five years after the event can be given probative force and we believe none can be found. And, manifestly, if there was a valid delivery of the deed it can not be rescinded by will subsequently executed.

We think it is most probable that, after Mrs. Ottinger learned that her son was still living and wished to take her to his home and care for her during her remaining days, she regretted having conveyed the property to his children. If defendant's insistence that Mr. Kilgo inadvertently passed the deed to the Register of Deeds is true, she could have filed suit to have it rescinded and could have proven that fact by Mr. Kilgo. She allowed it to remain of record for six years prior to her death, however, without attempting to do so. If her purpose was to defeat the claim of alimony of defendant's wife, an undelivered deed would not have accomplished her purpose. After these changes of circumstances she may have felt that Mr. Kilgo should have advised her against

making the deed and it may be that this was the cause of her displeasure.

The declarations of Mrs. Ottinger above mentioned that the deed had been executed and recorded are to be treated as declarations against interest and are evidence of her intention to treat the deed as effectively delivered. Couch v. Hoover, 18 Tenn. App. 523, 79 S. W. (2d) 807; Annotation 34 A. L. R. (2d) 606. The question of delivery, being a matter of intention, is to be inferred from all the circumstances including the conduct, acts and words of the grantor. Couch v. Hoover, supra; Thornton v. Thornton, 39 Tenn. App. 225, 282 S. W. (2d) 361. Where the effect of the subsequent declarations, however, is to impeach a recorded deed by showing non-delivery, they are not admissible. Annotation 34 A.L.R. (2d) 611-613.

The fact that the grantor regained possession of the deed is a circumstance to be considered as reflecting upon her original intention in executing and parting with possession of the deed but this circumstance is not conclusive as against delivery. 26 C. J. S. Deeds sec. 43, p. 694. And it is not sufficient as a matter of law to rebut the presumption of delivery arising from the fact of registration, especially where the grantees are minors and members of the grantor's family. Davis v. Garrett, 91 Tenn. 147, 18 S. W. 113; 16 Am. Jur. 665. Couch v. Hoover, supra [18 Tenn. App. 523, 79 S. W. (2d) 807], holds that there is a presumption that the deed was never delivered where it is in the possession of the grantor or his agent or attorney, *"unless grantor has retained an interest thereunder, or where the grantee is an infant."*

The retention of an interest in the property by the grantor and the circumstance of the infancy of the grantee concur in this case and, in addition, there is the fact of registration which, as the Chancellor held, is not satisfactorily explained. The assumed inadvertence in the registration of the deed implies without proof that Mr. Kilgo either violated his instructions or was acting beyond his authority and placed the deed of record at his own expense. There is no reasonable basis for either assumption.

We think the Chancellor reached the right conclusion. Affirmed at the cost of appellants and sureties.

Hale and Howard, JJ., concur.