GOODLETT et al. v. GOODMAN COAL & COKE CO. et al.

(Circuit Court of Appeals, Sixth Circuit. January 3, 1912.)

No. 2,143.

1. DEEDS (§ 194*)—PRESUMPTION OF DELIVERY—DATE OF REGISTRATION.

Shannon's Code, § 3712, provides that to authenticate an instrument for registration, its execution shall be acknowledged by the maker or proved by two subscribing witnesses. Section 3748 declares that instru-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ments so proved or acknowledged and registered shall be received as evidence in any of the courts of the state, subject, nevertheless, to be impeached and proved to be a forgery, or to be otherwise inoperative, if the fact be so, and section 5573 provides that duly certified copies of all records belonging to any public office are evidence in all cases. *Held* that, where a certified copy of a deed duly executed and registered is offered and received in evidence, it is prima facie evidence of the whole copy, and therefore raises a presumption that the deed was delivered at the time of its date, and not as of the date of its registration.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. § 580; Dec. Dig. § 194.*]

2. TAXATION (§ 505*)—REAL PROPERTY—LIEN—"RETURN."

1 Tenn. St. 1831, pp. 335–362, relating to the levy and collection of taxes, required the property owner to make return of his property for making up the tax lists, and required a justice appointed in each county to receive the list to make return thereof to the county court. Section 3 (1 Tenn. St. 1831, p. 337) provided that the tax shall be a lien on the property of the person returning the same, when it shall become due and payable, on all the taxpayer's taxable property notwithstanding the same may have been divided or alienated or vested in the name of others than those who actually owned the same "at the time of return of such property or sale thereof although the owner may not be known," etc. Acts 1835–36, c. 14, §§ 4, 5, amending the prior act made it the duty of all property owners in a district to attend on the first Friday and succeeding day in June, 1836, and forever thereafter on the third Friday and succeeding day in January each succeeding year, and to return to commissioners the amount of his taxable property which shall be listed for taxation, etc. *Held*, that the word "return," as so used, in so far as it related to the lien for taxes imposed by the act of 1813, meant not the return of the taxpayer, but the return of the tax list to the county court, since the fact that the taxpayer's return was required to embrace all taxable property owned or possessed by him on January 10th, could not change the character of his return in the sense that it would operate to create a lien, which could arise only by act of the law, and hence where a conveyance of certain real estate to a purchaser was registered before taxes were either assessed or spread for the year 1839, a subsequent assessment of taxes against such land to the grantor as the "reputed owner" was void.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 935; Dec. Dig. § 505.*

For other definitions, see Words and Phrases, vol. 7, pp. 6202–6205.]

In Error to the Circuit Court of the United States for the Eastern District of Tennessee.

Ejectment by Gilbert C. Goodlett and others against the Goodman Coal & Coke Company and others. Judgment for defendants, and plaintiffs bring error. Reversed, and new trial granted.

L. D. Smith (Gourolmon, Welcker & Smith, on the brief), for plaintiffs in error.

J. J. Lynch (Chambliss & Chambliss and Spears, Lynch, Spears & Phillips, on the brief), for defendants in error.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

WARRINGTON, Circuit Judge. The only question passed upon below and in express terms assigned as the subject of error is whether

under a certified copy of a deed conveying land, in the absence of other evidence, the presumption of delivery of the original shall be applied to the time of its date or to the time of its registration. The question arose below in this way: In an action of ejectment with plea of not guilty the plaintiffs (now plaintiffs in error) to show their title introduced a grant of the state of Tennessee, dated January 13, 1835, conveying the land in question (2,000 acres) to one Rice; they then offered a certified copy of a deed executed by Rice to one Washington, dated December 5, 1838, duly acknowledged on the following day, recorded in the register's office of White county on January 19, 1839, and in the like office of Rhea county (where the land is situated) on the 26th of the same month; plaintiffs also offered proofs tending to show that they were the only heirs at law of Washington.

For the purpose of showing that plaintiffs were not the owners of the land, defendants introduced a certified copy of a tax deed, dated July 3, 1850, executed by the tax collector of Rhea county to one Gillespie, in which it is recited that a judgment was rendered in the circuit court of Rhea county on March 8, 1843, in favor of the state for taxes, costs, and charges due and unpaid for the year 1839 against the land, of which Rice was the reputed owner; that after advertising and giving the notice required by law, the collector sold the land on the first Monday of July, 1843, at public sale, to Gillespie; and the deed was executed seven years later by a successor of the collector making the sale.

We take it that it was admitted by the plaintiffs in the court below that the taxes for the year 1839 accrued on the 10th of January of that year, when Rice still appeared by the deed register to be the owner; for in the original briefs filed here for plaintiffs and defendants, the counsel for both sides proceeded upon that theory. The learned trial judge held that since the original deed from Rice to Washington was not found in the possession of the plaintiffs or others through whom they claimed, "the only presumption of the delivery of that deed at all arises from the fact of its registration," and upon motion a verdict was directed for the defendants.

It is apparent that if the presumption of delivery must be applied to the date of registration and the taxes accrued in the sense that they became a lien on January 10, 1839, the direction to the jury was correct; because, in spite of the date of the deed (December 5, 1838) and the date of its acknowledgment (December 6, 1838) the lien accrued prior to the date of registration, January 19, 1839, in White county, and January 26th following, in Rhea county. If either of the hypotheses stated is erroneous, it is equally plain that it was error to direct a verdict.

[1] In Shannon's Code, p. 886, § 3712, it is provided that "to authenticate an instrument for registration, its execution shall be acknowledged by the maker, or proved by two subscribing witnesses, at least"; and the certificate appearing in the Rice-Washington deed is in the form prescribed by section 3717, and in the deed the clerk certified to his personal acquaintance with the bargainer (Rice) "who acknowledged that he executed the foregoing deed for the purposes

therein contained." In the chapter of the Code (Shan. at page 881) which includes "deeds for the absolute conveyance of any lands," it is provided (page 893, § 3748) that "instruments so proved or acknowledged and registered, shall be received as evidence in any of the courts or judicial tribunals of the state, subject, nevertheless, to be impeached and proved to be a forgery, or to be otherwise inoperative, if the fact be so." It is provided in respect of documentary evidence (section 5573, p. 1396) that "duly certified copies of all records * * * belonging to any public office * * * are evidence in all cases."

What is the object of this legislation? It is not contended, as in reason it could not be, that it is beyond the power of the Legislature to enact that instruments, safeguarded as these are, shall be admissible as prima facie evidence, of course not as conclusive evidence. Marx v. Hanthorn, 148 U. S. 172, 181 to 183, 13 Sup. Ct. 508, 37 L. Ed. 410; Mobile, J. & K. C. R. Co. v. Turnipseed, 219 U. S. 35, 42, 31 Sup. Ct. 136, 55 L. Ed. 78, 32 L. R. A. (N. S.) 226. If these statutes do not mean in a prima facie sense that the certified copy shall be considered as an evidential substitute for the original, it is difficult to ascribe to the legislation any serviceable purpose, except possibly mere notice. It could hardly be claimed that this legislation makes one part of the certified copy evidence and not another, without doing violence to the language of the statutes. They provide that the certified copy—that is, the whole copy—shall be evidence.

In 1844, in Saunders v. Harris, 5 Humph. (Tenn.) 345, 346, when denying admissibility to a copy of a bill of sale executed in Georgia under a system of registration that was intended to give notice merely of the existence of such instruments, and not to create and perpetuate record evidence of their execution, it was said of the Tennessee system:

"The pervading principle of our whole registration system being to prove and perpetuate a valid execution of instruments, as well as to give notice of their existence."

Again, in Tate v. Lawrence, 11 Heisk. (Tenn.) 503, 511, it is said:

"The objects of our registration laws were to preserve the muniments of title—to perpetuate the evidence of their valid execution—to give to the community notices of the changes in ownership of property. [Yerger v. Young's Heirs] 9 Yerg. (Tenn.) 37; [Saunders v. Harris] 5 Humph. (Tenn.) 345; 4 King's Dig. § 10,336."

And continuing, respecting the requirement in 1805 of two subscribing witnesses, it is said (11 Heisk. [Tenn.] 512):

"Thus it will be seen that these statutes have gradually been amended and improved upon until the registration policy has been settled for more than 40 years, that such instruments must either be proven by the acknowledgment of the bargainer or by the testimony of two subscribing witnesses."

It is admitted by defendants' counsel, and, on the authority of Kirkman v. Bank, 2 Cold. (Tenn.) 397, 402, McEwen v. Troost, 1 Sneed, 186, 191, 2 Greenleaf on Evidence, § 297, it was said by the court below that "where the original deed is in the possession of the grantee and is offered in evidence by him, such possession is of itself

prima facie evidence of delivery." The same conclusion appears to have been reached by the Supreme Court of Tennessee in respect to certified copies. In Owen, Adm'r, v. Owen, 5 Humph. (Tenn.) 352, a question arose as to the title to a slave. Title was claimed by Mrs. Owen under a deed made to a trustee for her separate use, while she was the wife of one Thompson. The deed was dated February 26, 1835, and registered on December 16, 1840. The defendant William Owen claimed the negro by virtue of a deed, dated May 29, 1840, from Herbert Owen, then the husband of the complainant. Manifestly these dates rendered the date of delivery of the deed to the trustee of Mrs. Owen essential to her title. A copy of the deed in trust, from the register's books, was offered in evidence, and it was insisted that it furnished "no evidence that it was executed earlier than the time it was acknowledged for registration; and that previously to that time the deed under which the defendant claimed was executed." Held, 5 Humph. (Tenn.) 354, 355:

"We think the copy of this deed, as registered, is prima facie evidence of the truth of its contents; that the date is a part of the deed, and, when Cannon acknowledged the execution of the deed, he acknowledged its execution on the day it bears date."

In Land Co. v. Hilton, 121 Tenn. 308, 312, 120 S. W. 162, 163, under issues made upon a bill to recover possession of land, complainant relied upon adverse possession for more than seven years under color of title. In complainant's deraignment of title, the time of delivery of the deed relied on to show color of title became in the course of the trial of vital importance. So far as the report of the case is concerned, it does not appear whether the original deed or a certified copy of it was offered in evidence; but counsel for complainants in the present case states it to be a fact shown by the record of the case that the original document was not introduced, but simply a certified copy. This was called to the attention of the court below in the present case and accepted as a fact; and defendants do not dispute the matter here. It appears by the opinion that the validity of the deed was attacked "(1) for insufficiency of the description of the land, and (2) because it does not appear that said deed was ever delivered." Upon the question of delivery of the deed it was said (121 Tenn. 320, 120 S. W. 165):

"It is insisted that the deed dated November 20, 1852, was not acknowledged until November 22, 1858, and, defendants insist, was not delivered until acknowledged. * * * It is insisted on behalf of complainant that the presumption of law is that where a delivery is necessary the deed is delivered on the day it bears date."

After making some citations and comments it was further said (121 Tenn. 321, 120 S. W. 166):

"But we find that the decided weight of authority is that delivery, in the absence of proof to the contrary, is presumed to have been made at the date of the deed, although its acknowledgment appears to have been made at a subsequent date;" citing a number of decisions on that page and the one following.

The learned trial judge did not feel constrained to follow these decisions, because he did not think the question now in issue was considered. This conclusion seems to us to overlook alike the object of the registration laws, as determined by the Supreme Court, before pointed out, and the apparent import of the language employed in the decisions. When, under the issue in Owen, Adm'r, v. Owen, the Supreme Court referred to the acknowledgment of the *execution* of the deed in dispute, and ascribed the execution to the time of its date, it must be inferred that they used the word "execution" with reference to its ordinary meaning—that is, that the due execution of a deed includes its delivery (Davis, Adm'r, v. Garrett, 91 Tenn. 147, 150, 18 S. W. 113); and, as the trial judge stated, the delivery of a deed is a part of its execution (citing 4 Kent's Comm. [13th Ed.] star page 454, 2 Jones, Real Prop. § 1217). It is not disputed that in Tennessee, as between the parties to a deed, title passes by its delivery without respect to registration.

And as to Land Co. v. Hilton, since the instrument offered in evidence under which color of title was claimed turns out to have been a certified copy of the original deed, it is rather a strain on language to say that the court did not intend to give the ordinary meaning to the words "delivery, in the absence of proof to the contrary, is presumed to have been made at the date of the deed."

The case which seems to have been most controlling upon the court below is Davis, Adm'r, v. Garrett, supra, 91 Tenn. 147, 18 S. W. 113. The present Mr. Justice Lurton, while judge of the Supreme Court of Tennessee, delivered the opinion. Mrs. Bryant prosecuted an appeal from a decree, charging her with the value of a negro slave as an advancement. Her father, in 1859, had tried to make her a gift of the slave by deed. The donee was then about seven years of age and residing with her father. The subject of the gift was then on the premises and continued there until she voluntarily left after her emancipation. The deed was signed by the donee's father and attested by three witnesses. A few days after its date the donor personally acknowledged its execution before the clerk of the county court, and thereafter "caused it to be registered." 91 Tenn. 149, 18 S. W. 113. The deed was left in the register's office and was found there pending the trial of the questions in suit. Judge Lurton placed stress on the fact that the donee was, at the time of the attempted gift, only seven years of age and residing with her father. The court was called upon to work out the natural sequence of events from the facts proved. It was said (91 Tenn. 152, 18 S. W. 113):

"The donee was incapable of understanding the transaction and a formal delivery of the deed to her would have been so extremely formal as to have been farcical."

And further (150):

"This deed was either registered by direction of the donor or by direction of some one to whom he had delivered the deed."

The court presumed the registration to have been by direction of the father "as the most probable." It is true that the court referred

to other decisions in Tennessee; to one showing that doubt had existed in the mind of the Supreme Court whether the execution of a deed and delivery to the register would amount to delivery; and to another in which it was held that it was not sufficient evidence; but of the latter case Judge Lurton said (91 Tenn. 151, 18 S. W. 113):

"That case goes to the verge of the law, and should be limited to its facts."

Upon the whole, the court held in substance in the Davis Case that since the father must have been the one most interested in perfecting the gift he intended to make to his infant daughter, a presumption of delivery would be indulged from the fact of registration. This interpretation of the transaction was ascribing to the father the most natural and probable course of conduct he could have pursued with reference to his infant daughter.

The other decision that seems to have been regarded as also controlling in the court below is Cumberland Land Co. v. Daniel, 52 S. W. 446 (Tenn. Ch. App. in 1899). The land company claimed land under a grant of the Grand View Land Company, dated June 6, 1896. May 19, 1897, Daniel and another each obtained a judgment against the latter company. May 22, 1897, execution was issued on each judgment, and on May 26th orders of sale were entered. The proof showed that the deed was made and filed for registration at 11:47 a. m., and that complainant's charter was granted at 4:16 p. m. of the same day. The object of the suit was to have the execution sales enjoined, because at the dates of the executions and orders the land had passed from the Grand View Company to the Cumberland Company; but the defense was that the Cumberland corporation did not exist at the time of the filing of the deed for registration, and that the grant was void for want of a grantee. Under a statute of Tennessee enacting that any obligation made in favor of an association either as an actual or pretended corporation, which afterward becomes incorporated, shall be binding in favor of the body corporate, it was held that when the levies upon the lands were made they were void, provided the deed had been delivered. 52 S. W. 450. The original deed appears to have been in the possession of the grantee company. In view of the statute alluded to and the construction that the court placed upon it, since the original deed was found in possession of the grantee, it is difficult to see how the question of delivery passed upon could have arisen. The court, however, followed the rule laid down by Judge Lurton in Davis v. Garrett, supra. The result is that the two cases seemingly relied on are alike as respects the competency of the grantees at the times respectively in issue, to accept a deed or present it for registration; because it will be recalled that the grantee named in the deed involved in Davis v. Garrett was at the time only seven years old, and the grantee named in the deed involved in Cumberland Land Co. v. Daniel was not in existence at the time the deed was filed for registration.

These cases, we think, are in principle and effect fair illustrations of the circumstances under which the Supreme Court of the state has (except in decisions which apparently that court has in effect over-

ruled) held that the presumption of delivery will be ascribed to the date of registration, rather than the date of the deed. We are unable otherwise to reconcile those and kindred decisions of the state, with the decisions in Owen v. Owen and Land Co. v. Hilton, supra. The former of these two decisions does not seem to have been disturbed, and the latter is the latest expression of the Supreme Court of the state. We think there is no real conflict between these two classes of decisions. Where the grantee named in a deed is at the time it bears date incapable of procuring registration, like the little child in Davis v. Garrett or the unincorporated company in Cumberland Land Co. v. Daniel, it would, as Judge Lurton said in the Davis Case, be "farcical" to ascribe the act of procuring registration to the grantee; but where the grantee named in a deed is at the time of its date of full age and competency to present a deed with direction for its registration, the reason for ascribing the act to the grantor ceases. What interest has the grantor in such a case to take upon himself the trouble and expense of registration? The interest is plainly in the grantee, and, according to our observation and experience, it is the common practice in such cases for the grantee to present the deed for registration and defray the expense of it; and this, we think, is at the bottom of the rule for indulging a presumption that delivery was "made at the date of the deed," as laid down in Land Co. v. Hilton, supra (121 Tenn. 321, 120 S. W. 166).

We therefore hold that the rule to be deduced from the applicable decisions of the Supreme Court of Tennessee, before commented on, is that the presumption of delivery must (where the competency of the grantee is not questioned) be ascribed to the date of the deed, and, consequently, in the present case the presumption is to be so applied.

[2] This opinion might well be closed here; but another question has been brought into the case in this court, which, if resolved in favor of the plaintiff, would result in holding that the tax deed in dispute does not as to plaintiffs establish an outstanding title. This question arises upon the tax statutes in existence at the time, and would seem to be another and pertinent test of whether the motion to direct should have been granted; and it, therefore, falls fairly within the assignment of errors. The plaintiffs' counsel filed a supplemental and reply brief in this court, in which it is insisted that the taxes for 1839 did not become a lien or charge against the land until after the date of the last registration of the deed from Rice to Washington; and thereupon defendants' counsel filed a supplemental brief contesting this view. The question was not called to the attention of the court below.

The statutes pertinent to the tax sale and taxes in dispute seem to be embraced within the tax act of 1813 and its amendments (1 Tenn. Stat. 1831, pp. 335 to 362), except as repealed by section 20 of Act Feb. 5, 1836, Acts 1835–36, p. 72; also chapter 14, Id. p. 67; also chapter 15, Id. pp. 72 to 78. There is ambiguity touching the meaning of the word "return" as used in the phrase "at the time of the *return* of such property or sale thereof," in section 3 of the Act of 1813 (1 Tenn. Stat. 1831, p. 337). Does this word (re-

turn) refer to an act of the taxpayer or to the act of the tax officer? The one was to make return of his property for making up the tax lists, and the other to make return of the tax lists to the county court (Id. § 11, p. 340). The same question arises respecting sections 4, 5, 7, 10, and 11, c. 14, of the second act before cited. It is hard to see how the lien provided for by the act of 1813 could have been created by the act of the taxpayer; for the statute expressly declared that the tax "shall be and remain a lien on all lands * * * when it shall become *due and payable.*" Section 15 of the act required the collector to appoint a day and place for receiving the taxes, which was at a time much later than that of requiring the taxpayer to assist in making up the tax lists. Neither of the other acts before alluded to, in express terms, imposed a lien.

If the tax lien is to be worked out in the manner suggested by counsel for defendants under sections 4 and 5 of chapter 15 of the act before cited, still the words "due return to the commissioners," as used in section 5 of chapter 14, Acts 1835–36, supra, could hardly fix the time for the lien to attach, because that return of the taxpayer was designed only to aid the commissioner to make out the tax lists and so could not amount to an assessment of taxes in the sense of creating a lien. Black on Tax Titles (2d Ed.) § 97, p. 117. The fact that the taxpayer's return was required to embrace all taxable property "owned or possessed on the 10th day of January last past" obviously could not change the character of his return in the sense that it would operate to create a lien. A tax lien could not have been created except through some direct or indirect act of the lawmaking power itself; and conceding that the lien might have been declared to take effect by relation back to the date (January 10th), as to which the returns of the property holdings of the taxpayers were required to be made, still nothing in the nature of a lien as of January 10th appears to have been created. It would therefore seem to be more reasonable to treat the returns, which the commissioners were required to make to the clerks of the county courts before the March term (showing the name of each taxpayer in alphabetical order, etc. [section 10]), as the first official act at all appropriate to create a tax lien.

The contention of counsel for defendants that neither the act of 1813, nor the other acts mentioned, made any provision for payment of taxes, seems to be misconceived; because in addition to the provision in that regard found in section 15 of the act of 1813 before pointed out, section 3 of chapter 15 of the last act cited makes similar provision for the payment of taxes. It is enough to say, without stating further details, that neither any statutory provision fixing the date on which a tax lien should attach, nor any act of any tax official that was calculated to create a lien, has been called to our attention that could have imposed a lien as early as the date of last registration of the deed from Rice to Washington. Nor was it open to any taxpayer to pay his taxes for the year 1839 at a time earlier than the last registration; no taxes were ascertained, much less spread, as early as that registration.

It is true that counsel for defendants call attention to decisions of the Supreme Court of Tennessee in which counsel claim the questions we have considered have been decided. But as we read those cases, the decisions were rendered upon statutes materially different from the statutes applicable to the taxes of 1839. For instance, in sections 554 and 555 of the Code of 1858, to which attention is called by defendant's counsel, the ambiguous word "return" as used in the act of 1813 and also in the act of 1835–36, was excluded, and the words "assessed" and "assessing" were substituted; and when counsel refer to State v. Duncan, 3 Lea, 679, 686, we think they overlook the fact that the tax act of 1875, c. 81, § 9, there under consideration, like the sections of the Code of 1858, made no provision for a lien prior to the date of the *assessment*. No case has been cited, and we have not been able to discover any, deciding that a tax lien could have arisen in 1839 prior to the return of the tax lists which the commissioner was required to make to the clerk of the county court.

The tax commissioner was in 1839 authorized to make out and return tax lists of property as to which the owners had failed to make return; but the commissioner could not make any such return until after February 10th. The fact that the commissioner made the return after that date as regards the land in suit is, we think, fairly inferable from the recital in the tax deed that Rice was "the *reputed*' owner." It is hard to conceive that Rice made a return of the land in January—a month after he had executed the deed to Washington. Washington had from the 26th of January, appeared to be the registered owner of the land. It is not claimed that the land of a registered owner can be validly taxed and sold in the name of his grantor —a practical stranger to the title. See Anderson v. Post, 38 S. W. 283, 286 (Ch. App. of Tenn., June 13, 1896, affirmed by Supreme Court September 26, 1896) ; City of Nashville v. Cowan, 10 Lea (Tenn.) 209, 215; Tax Title Cases, 105 Tenn. 245, 252, 253, 58 S. W. 259.

The judgment below must be reversed and a new trial awarded, with costs.