# ELIZABETH STEED COCKRELL et al. v. JAMES E. TUELL et ux.—454 S.W.2d 713.

Eastern Section. December 3, 1970.

Certiorari Denied by Supreme Court March 2, 1970.

424

Fred Puett, Frank N. Bratton, Athens, for appellants.

W. D. Hitch, Athens, Charles C. Guinn, Etowah, for appellees.

COOPER, J. This is an appeal from the decree of the Chancery Court of McMinn County declaring an instrument in the form of a deed, and containing a provision postponing its taking effect until after the death of a grantor, to be void and ordering a partition by sale of property in Athens, Tennessee.

The property that is the subject of the suit was acquired by J. B. Eaton and wife in 1888. On the death of Mr. Eaton prior to World War I, Mrs. Eaton having preceded him in death, title to the property descended to the three daughters of the Eatons: Edna Eaton Steed, the mother of the complainants, Miss Molly Eaton, who never married, and Adria Eaton Tuell, mother of the defendant, James E. Tuell, and two other children.

Mrs. Edna Eaton Steed conveyed her interest in the property to her sisters, Molly Eaton and Adria Eaton Tuell.

From the death of her father and until her own death in 1942, Miss Molly Eaton lived in the Eaton homeplace with her sister, Mrs. Adria Eaton Tuell, and her sister's family. The expenses of the home during the late 30's and early 40's were paid primarily by Louise Tuell Eblen, a daughter of Adria Eaton Tuell who made her home with her mother and aunt. The defendant, James E. Tuell, also helped with the household expenses.

Miss Molly Eaton died intestate in 1942, leaving as her heirs at law her sister Adria Eaton Tuell, and the complainants, Elizabeth Steed Cockrell and Gerald Eaton Steed, the children of the deceased sister, Edna Eaton Steed.

Mrs. Adria Eaton Tuell continued to live in the Eaton homeplace after the death of Miss Molly Eaton, until illness compelled her to live with her daughter, Mrs. Eblen, in Cookeville, Tennessee. In the waning months of her life she was confined in a nursing home in Athens, Tennessee.

Mrs. Adria Eaton Tuell died intestate, leaving as her heirs her children: Mrs. Louise Tuell Eblen, Reed Tuell, and the defendant James E. Tuell.

James E. Tuell was appointed administrator of his mother's estate. Included in Mrs. Tuell's papers was an instrument executed by Molly Eaton on April 21, 1938, and which was shown to have been recorded on June 2, 1951, conveying Molly Eaton's one-half undivided interest in the J. E. Eaton homeplace to her sister Adria Eaton Tuell. The instrument, which was in the form of a warranty deed and was properly acknowledged was as follows:

''For and in consideration of the sum of One Dollar ($1.00), to me in hand paid, the receipt of which is hereby acknowledged, and other good and valuable considerations not necessary here to mention, I, Mollie Eaton, have this day granted, bargained, sold and conveyed, and by these presents do hereby grant, bargain, sell and convey unto Adria E. Tuell, my one-half undivided interest in and to the property hereinafter described. This conveyance is not to take effect until after my death, it being my intention that the said Adria E. Tuell have my one-half undivided interest in said property, she being the owner of the other half undivided interest * * *'' (the property described was the Eaton homeplace.)

"To have and to hold the said property to the said Adria E. Tuell, as here in above set forth, and I covenant with the said Adria E. Tuell that I am lawfully seized and possessed of the one-half undivided interest in said property, have a good and lawful right to sell and convey the same, and that the same is unencumbered, and I do further covenant and bind myself, heirs, and personal representatives that I will forever warrant and defend the title to the said premises to the said Adria E. Tuell against the lawful claims of all persons whom so ever."

Subsequently, and for a total consideration of $12,000.00, the defendant, James E. Tuell, purchased the interest of his brother and sister in the Eaton homeplace, taking title in his name and that of his wife, the defendant Ruth Tuell.

The complainants asserted their claim to a one-fourth interest in the J. B. Eaton homeplace property as heirs of Miss Molly Eaton on filing this suit on September 29, 1967.

The defendants, in their answer, admitted complainants were heirs at law of Molly Eaton, but denied that Molly Eaton owned any interest in the J. B. Eaton property at the time of her death, relying on the deed referred to above.

The complainants did not file a written replication, but according to the Chancellor's memorandum attacked "the writing as void because it contains the words: 'This conveyance is not to take effect until after my death * * *' They (the complainants) say it used words testamentary and therefore can't be a deed and that it is not properly witnessed and therefore can't be a will. They also attack the delivery of the writing and say the surrounding cir-

cumstances are such as to cast the burden upon the defendants to show a delivery of the deed if it be such.''

There is little direct evidence in the record either as to the execution or the delivery of the instrument.

The complainant, Elizabeth Cockrell Steed, testified she knew nothing of the instrument executed by Molly Eaton until after the present suit was filed; that she didn't think Aunt Adria knew of the instrument as ''about two or three years after Aunt Molly died (this would place the conversation in 1944 or 1945) * * * She (Mrs. Tuell) asked us, the Steeds, niece and nephew, to sign our share (in the Eaton homeplace) over to her; that Aunt Molly didn't leave a will and that she didn't think that we had done enough for her to deserve anything she had left.''

Mrs. Steed further testified that neither she nor her brother gave Mrs. Tuell an answer, nor made any inquiry concerning the property until this suit was brought some 23 years later.

Louise Tuell Eblen, a daughter of Adria Tuell, testified she never had any conversation with her mother or her Aunt Molly about the property ''because I thought they had it all settled between them. It was to take—That was their insurance and if one of them outlived the other the property was to go to her and if the other outlived the other the property was to go to her.'' Mrs. Eblen further testified that she knew her mother had a paper from Aunt Molly but did not know what it was; that she had seen a paper, such as the instrument in question, in the possession of her mother and that it was kept with other papers in a large handbag.

The defendant James Tuell testified he knew of the instrument within a day or two after its execution; that his Aunt Molly had been ill "with a heart attack and bedfast for a month" and said she had "deeded her part to take care of and bury her." Mr. Tuell testified further that Judge Frank K. Boyd, an attorney practicing in Athens, drew the instrument.

The parties stipulated that Judge Boyd was incompetent and could not testify and that Fred Stephenson, who took Miss Molly's acknowledgement to the instrument was dead.

█ "It is a rule everywhere recognized that in construing an instrument in the form of a deed, containing a provision postponing its taking effect until after the death of the grantor, the intent of the grantor as to the interest which he intends to pass—whether a present irrevocable one, or an ambulatory one, to take effect after the maker's death—is controlling." 11 A.L.R. 23, 41, citing numerous cases including Armstrong v. Armstrong, 63 Tenn. 357 and Ellis v. Pearson, 104 Tenn. 591, 58 S.W. 318. See also 31 A.L.R.2d 532 and 23 Am.Jur.2d, Deeds, Sec. 177, p. 222. The intent of the grantor is to be determined from the entire instrument, read in the light of the circumstances surrounding its drafting and execution. Carmody v. Trustees of Presbyterian Church, 29 Tenn.App. 275, 203 S.W.2d 176; Couch v. Hoover, 18 Tenn.App. 523, 79 S.W.2d 807. See also Ellis v. Pearson, 104 Tenn. 591, 58 S.W. 318, wherein it is stated that:

"Whether a paper is to operate as a will or deed depends upon the intention of the maker, to be gathered from its language. Armstrong v. Armstrong, 4 Bax. (63 Tenn.) 358. In order that it be held a deed, it must convey

an interest to take effect in praesenti, though the enjoyment of this interest may rest in futuro. Wall's Adm'r v. Ward, 2 Swan (32 Tenn.) 648. It is otherwise as to a will; it speaks as of the death of the testator.''

This court in Couch v. Hoover, 18 Tenn. App. 523, 528, 530, 79 S.W.2d 807, 810, and again in Smith v. Prichard, 22 Tenn.App. 321, 122 S.W.2d 829, 836, pointed out that:

''If the vested right to the present or future enjoyment of some specific thing then owned by the donor, passes to a designated person, the instrument operates in praesenti, and is a deed; and the postponement of the possession and beneficial enjoyment until the death of the donor, does not make it a will. Sizer's Pritchard on Wills and Executors, sec. 18. Swails v. Bushart, 2 Head 561; Wall's Adm'r v. Ward, 2 Swan 648; Caines v. Marley, 2 Yerg. 582; Cains' Lessee v. Jones, 5 Yerg. 249, 250; Swiney v. Swiney, 14 Lea 316.

''A paper in the form of a deed duly acknowledged and legally delivered, giving certain designated land to a certain person at the death of the giver is an irrevocable deed, and not a testamentary paper. It conveys a present or vested remainder estate to be enjoyed after the death of the grantor (citing numerous cases).''

In the instant case, the instrument executed by Molly Eaton contains a granting clause couched in the customary language of a present conveyance, the usual habendum clause, and covenants of warranty and seizen. It purports to convey an interest in land owned by the grantor at the time the conveyance was executed, though enjoyment of the land is postponed until the death of the donor.

As pointed out in the case of Burchett v. Burchett, 237 Ky. 411, 35 S.W.2d 557, 558, and quoted with approval in Couch v. Hoover, supra, and Smith v. Prichard, supra,

"Why should even the most ignorant man adopt the form of a deed if he intended to make a will? Almost any person, however illiterate or uninformed, would, if he desired to execute a real will, adopt for expressing his purpose language altogether unsuited for a present conveyance. Where the form of a deed is actually employed, such phrases as 'after my death,' 'vest at my death,' 'take effect at my death,' and the like, may well be construed as merely designed to postpone possession or enjoyment by the grantee till after the death of the grantor."

In view of these authorities and the evidence set out above, we are of the opinion that the instrument in question is a deed and conveys a present interest.

■ Further, we are of the opinion that the evidence shows there was a valid delivery of the deed executed by Molly Eaton.

■ Delivery of deed is a matter of intention manifested by conduct, words, acts of the grantor, and is to be inferred from all circumstances appearing. Cox v. McCartney, 34 Tenn.App. 235, 236 S.W.2d 736; Mast v. Shepard, 56 Tenn.App. 473, 408 S.W.2d 411.

■ One circumstance which evidences a strong presumption of delivery is possession of the deed by the grantee. See Kirkman v. Bank, 42 Tenn. 397; 26A C.J.S. Deeds sec. 204, p. 84; 23 Am.Jur.2d, Deeds, Sec. 115, p. 163.

"The presumption arising from possession of the deed by the grantee * * * may be overcome only by the most satisfactory evidence, by counter evidence of superior weight, or by clear and convincing evidence." 26A C.J.S. Deeds sec. 204, p. 84; 23 Am.Jur.2d, Deeds, Sec. 126, p. 175.

In the instant case as we view the evidence, it shows that Adria Tuell had possession of the deed executed by Molly Eaton within a day or two of its execution and retained possession of the deed until her death in 1963; there is no evidence that Mrs. Tuell acquired possession of the deed by either trick or artifice or without the knowledge or consent of the grantor. In the absence of such evidence, the presumption of due delivery attaching to the possession of the deed by the grantee, Mrs. Tuell, must be given effect.

█ The Chancellor, in his memorandum, pointed out characteristics of the deed which he termed suspicious; and, though he did not specifically so state, implicit in the comments of the Chancellor is a belief that the grantee changed or altered the deed, or someone had done it for her, to increase the size of the estate granted Adria Tuell. The Chancellor pointed out the obvious fact that two grades of paper were used in preparing the deed, and that the grantee's name appears as a strikeover on the second page of the instrument. The Chancellor also expressed the opinion that two typewriters were used in writing the deed and that the grantee's name on the second page was in a different type. We draw no adverse implication from the mere fact that two grades of paper were used in preparation of an instrument or from the fact an instrument contains a strikeover or an erasure.

As to the second observation by the Chancellor, we cannot say with any degree of certainty that two different typewriters were used in preparation of the instrument; but, even if it were so, it would not necessarily follow that an alteration was made in the instrument after its execution.

As pointed out by counsel for the defense, "the supposed alteration makes no sense." There is no question but what Molly Eaton's signature on the second page of the deed is genuine, so any change or alteration of the deed must have been to the first page. "If the grantee or someone else for her had been changing or altering the deed, * * * would it not be reasonable to assume (or to expect) that the first page would be changed or altered so as to strike from it the words indicating that the grantee would have property then but usage would be restricted in grantee until death of grantor." We think this supposition is as logical as the supposition that the grantee, or someone for her, altered the instrument to increase the size of the estate granted her by Molly Eaton.

Having concluded, contrary to the Chancellor, that the preponderance of the evidence shows the instrument executed by Molly Eaton on April 21, 1938, was a deed and conveyed a present interest in the Eaton homeplace to Adria Tuell and that the deed was delivered by Molly Eaton to Adria Tuell, the decree of the Chancellor is reversed and the cause dismissed. Costs of the cause are adjudged against complainants, Elizabeth Steed Cockrell and Gerald Eaton Steed.

McAmis, P. J., and Parrott, J., concur.