In re ESTATE OF Hazel Faye ATKIN-SON Executor: Franklin D. Atkinson, Appellee,

v.

ALLIED FENCE AND IMPROVEMENT COMPANY, INC. and Garrett J. Kile, Appellants.

Court of Appeals of Tennessee, Middle Section, at Nashville.

Nov. 20, 1987.

Permission to Appeal Denied by Supreme Court Feb. 29, 1988.

2. The Chancellor concluded the document was not a will.

Jack Green, Nashville, for appellants.

Terry B. Larkin, Centerville, for appellee.

## OPINION

CANTRELL, Judge.

The appellant filed a claim in the Probate Court for Maury County against the estate of Hazel Faye Atkinson to recover $18,-508.82, the sum that appellant, Atkinson's employer, had expended to pay Atkinson's medical bills. Atkinson's executor then moved the court to recover from Allied the proceeds from its sale of a house and lot the executor alleged was owned by Atkinson. The trial judge ruled in the estate's favor in both instances, and Allied appeals.

From the record, it appears that Allied Fence & Improvement Company, Inc. is the wholly-owned company of Garrett J. Kile, its founder, president, and sole shareholder. Then a Nashville fireman, Mr. Kile started Allied in 1959. In 1961, Miss Hazel Faye Atkinson, then 20, answered a classified ad run by Mr. Kile, and served as the company's secretary for the next 25 years. She never married, and a close relationship, described as a father-daughter relationship by Mr. Kile, sprang up between Miss Atkinson and her employer. One of the fruits of this relationship, it is undisputed, was that in 1972 Mr. Kile bought a house and lot on Riverside Drive in Nashville where Miss Atkinson lived until 1985.

In 1977, Mr. Kile had his lawyer prepare a warranty deed which purported to convey the Riverside Drive property to Hazel Faye Atkinson for "actual consideration or value, whichever is greater for this transfer [of] $15,300.00." This deed was never recorded, but it was found among Miss Atkinson's personal papers at her death. Mr. Kile testified however, that he never received any consideration for the sale of the property; that he put the deed in his office safe; that the safe had been broken into and could not be locked; and that the deed was never actually delivered to Miss Atkinson. He denied that he was implying that she had purloined the deed, but offered no explanation of how it came to be in her possession.

In 1980, Miss Atkinson became ill with a rare liver ailment, and soon used up her company-funded medical insurance. Mr. Kile, through his company, paid $18,508.57 for her medical expenses after the policy limits had been reached. In his testimony he insisted that his generosity was not altruistic but merely the result of his desire to have a valued employee return to work. Shortly before her death in 1986, Miss Atkinson was informed that Mr. Kile would no longer pay her medical bills.

In 1985, Miss Atkinson, no longer able to work, moved out of the Riverside Drive house to be nearer to her relatives in Columbia. At this point, Mr. Kile evidently put the house on the market. Lorene Moss, the real estate agent who listed the house, testified that all of her contacts were with Mr. Kile and not with Miss Atkinson, though she admitted that she had written letters to Miss Atkinson in Columbia which referred to "your house." One of the letters said, in part: "After the long wait the house finally sold. I want to thank you for the business of selling it. I hope you will be pleased and satisfied when Mr. Kile tells you all about it." It was at this point, February 20, 1986, that Mr. Kile, still the owner of record of the Riverside

Drive property since the 1977 deed to Miss Atkinson had not been recorded, conveyed the house and lot to Elliott and Helen Killebrew for $49,000.00.

Miss Atkinson died testate on March 6, 1986. In her will, she provided:

"I direct that my house and lot located at . 2122 Riverside Drive, Nashville, Tennessee be sold, and Garrett J. Kile is to be paid $11,085.89 for a loan and $750.00 for a carport, plus the taxable amount charged by the Internal Revenue Service on the sale of the house ..."

The action by Allied Fence & Improvement to recover its medical expenditures then commenced, followed by the estate of Hazel Faye Atkinson's action to recover the proceeds from the sale of the house and lot.

### The Medical Expenses

■ There was no written agreement between Allied, or Mr. Kile, and the decedent reflecting their understanding of whether the company expected to be repaid for the money it spent on her medical expenses. As the trial judge noted, Tenn.Code Ann. § 24–1–203, the Dead Man's Statute, prevents the corporate plaintiff from establishing such an agreement by the declarations of the decedent. Allied has based its claim on *quantum meruit.*

■ Actions brought upon theories of unjust enrichment, quasi contract, contracts implied in law, and quantum meruit are essentially the same. Courts frequently employ these terms interchangeably to describe implied obligations where, on the basis of justice and equity, the law will impose a contractual relationship on the parties. *Paschall's, Inc. v. Dozier,* 219 Tenn. 45, 53–4, 407 S.W.2d 150, 154 (1966). "Each case must be decided according to the essential elements of quasi-contract, to-wit: A benefit conferred upon the defendant by the plaintiff, appreciation by the defendant of such benefit, and acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof. The most significant requirement for a recovery on a quasi-con-

tract is that the enrichment to the defendant be unjust." *Id.* at 57, 407 S.W.2d at 155.

Mr. Kile specifically testified that the company's payment of Miss Atkinson's medical bills was not a loan; nor did he expect her to repay the money. He paid the medical bills because she was a valuable employee and he wanted her back at work. For a time she did return, but after her condition took a sharp turn for the worse and she moved to Columbia he told her that the company would pay no more bills.

The trial judge found no basis upon this testimony to conclude that the decedent was unjustly enriched, or, to put it another way, that a quasi-contract was formed. He found that "the corporate plaintiff was still investing in the recovery and return to work of this valued employee." In light of the fact that he never expected repayment of the money in the decedent's lifetime, the trial judge could find no basis for obligating her estate. Nor can we. Certainly Allied conferred a benefit upon the decedent which she accepted. But the only evidence of the circumstances surrounding the payments was that they were voluntary, and made in the hope that Allied would benefit from Miss Atkinson's return to work, and thus we find that there was nothing about the circumstances under which the benefit was conferred that would amount to an unjust enrichment to support a quantum meruit claim.

### The House and Lot

The trial court found that the preponderance of the evidence showed that the house on Riverside Drive was owned in fee simple by Hazel Faye Atkinson, and imposed a constructive trust on the proceeds of its sale by Mr. Kile. The central question is whether the unrecorded 1977 deed conveying the property to Miss Atkinson was ever delivered to her.

■ It has long been held that the delivery of a deed from a grantor to a grantee is essential to pass title to the grantee. *Miller v. Morelock,* 185 Tenn.

466, 473, 206 S.W.2d 427, 430 (1948); *Alexander's Lessee v. Bland,* 3 Tenn. (Cooke) 430, 436 (1813); *Mast v. Shepherd,* 56 Tenn.App. 473, 477, 408 S.W. 411, 413 (1966). Manual transfer is not necessary for delivery. *Gray v. Ward,* 52 S.W. 1028, 1035 (Tenn.Ch.App.1898). To be effective, the delivery must deprive the grantor of power to recall the deed, and delivery is complete only where the grantor has put the deed beyond his power to revoke or reclaim it. *Couch v. Hoover,* 18 Tenn.App. 523, 533, 79 S.W.2d 807, 812 (1934). *But cf. Farrar v. Bridges,* 24 Tenn. (5 Humph.) 411, 413 (1844) (signing, sealing and attestation of a deed will make it complete and effectual, although the instrument may be left in the possession of the grantor).

The proof at trial was unclear as to the delivery of the 1977 deed to the Riverside Drive property. Mr. Kile testified that the deed was placed in the office safe in 1977, and shortly afterwards the safe was broken and could not thereafter be locked. Miss Atkinson, of course, was not available to testify. However, the delivery of a deed is a matter of intention which may be inferred from the circumstances. *Early v. Street,* 192 Tenn. 463, 471, 241 S.W.2d 531, 534 (1951); *Cockrell v. Tuell,* 61 Tenn.App. 423, 431, 454 S.W.2d 713, 717 (1970). Possession of the deed by the grantee creates a strong presumption of delivery. *Cockrell v. Tuell, id.* at 431, 454 S.W.2d at 717 (quoting *Kirkman v. Bank,* 42 Tenn. (2 Cold.) 397, 402 (1865). Possession is prima facie evidence of delivery, absent opposing circumstances. *Savage v. Bon Air Coal, Land & Lumber Co.,* 2 Tenn.Ch.App. 594, 648 (1902); *Goodlett v. Goodman Coal & Coke Co.,* 192 F. 775, 778–9 (6th Cir.1912). The burden is on the party contesting the delivery to rebut the presumption. *Goodwin v. Ward,* 65 Tenn. 107, 108 (1873). To overcome the presumption, the party must present "the most satisfactory evidence, ... counter evidence of superior weight, or ... clear and convincing evidence." *Cockrell v. Tuell,* 61 Tenn.App. at 432, 454 S.W.2d at 717.

The only evidence presented to overcome the presumption that the deed was delivered to Miss Atkinson was Mr. Kile's testimony that she could have taken it from the unlocked office safe. Mr. Kile, as noted earlier, denied that he was making that implication, but even if he was, the fact that the decedent had an opportunity to take the deed is hardly clear and convincing evidence that she did so. Her sister, who had worked for Mr. Kile, also testified that Miss Atkinson was making monthly payments to Allied on the house, and that she had seen these payments entered in the company's books. Unfortunately, the books were not introduced into evidence by either side, but the provision in Miss Atkinson's will directing that the house be sold and a portion of the proceeds turned over to Mr. Kile is certainly consistent with the sister's testimony. We agree with the trial judge that the preponderance of the evidence was that the property was owned by Hazel Faye Atkinson in fee simple, and the appellant failed to carry its burden of overcoming the presumption of delivery.

The judgment of the trial court denying Allied Fence & Improvement Company's claim for reimbursement for medical expenses, and ordering Garrett J. Kile to pay into the registry of the court the net proceeds from the sale of the Riverside Drive property, less the amount acknowledged by the decedent in her will owed to Kile, is affirmed, and the cause remanded to the trial court for any other necessary proceedings. Tax the costs on appeal to the appellant.

TODD, P.J., and LEWIS, J., concur.