IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 22, 2018 Session

## IN RE: PHILIP ROSEMAN 2012 IRREVOCABLE GIFT TRUST

**Appeal from the Probate Court for Davidson County**
**No. 16P735   David Randall Kennedy, Judge**

_____

### No. M2017-01994-COA-R3-CV

_____

Philip Roseman, now deceased, petitioned the trial court to set aside a quitclaim deed, which he admittedly executed, transferring title of his house to his son as trustee of the Philip Roseman 2012 Irrevocable Gift Trust.  Philip Roseman averred that he did not have the requisite intent to make a complete gift when he executed the quitclaim deed. The trial court determined that the deed was valid and granted summary judgment to the trustee. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Probate Court Affirmed
and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and KENNY ARMSTRONG, J., joined.

Michael R. Griffin and David J. Callahan, III, Nashville, Tennessee, for the appellant, Jean Roseman, Personal Representative of the Estate of Philip Roseman.

Tyler Chance Yarbro and Margaret L. Behm, Nashville, Tennessee, for the appellee, Hal M. Roseman.

## OPINION

### BACKGROUND

Philip Roseman, now deceased,[1] initiated this litigation on April 28, 2016, to set aside a quitclaim deed which he had previously executed on December 19, 2012,

_____

[1] After this appeal was filed, Philip Roseman died on October 4, 2017.  Jean Roseman was substituted as Philip Roseman's personal representative. Because the Trustee, Hal Roseman, and Philip Roseman share the same last name, Philip Roseman will be referred to by his full name throughout this Opinion.

conveying ownership of his house, located at 106 Savoy Circle in Nashville, Tennessee (the "Property"), to his son Hal Roseman as trustee (the "Trustee") of the Philip Roseman 2012 Irrevocable Gift Trust (the "Trust").[2] It is undisputed that Philip Roseman executed the quitclaim deed in conjunction with the establishment of the Trust at the office of his long-time estate planning attorney David Heller on December 19, 2012.[3] It is also undisputed that the quitclaim deed was thereafter recorded with the Davidson County Register of Deeds.

Philip Roseman was ninety-four (94) years old when he established the Trust and executed the quitclaim deed on December 19, 2012. It is undisputed that he continued to reside at the Property with his second wife, Jean Roseman, after he executed the quitclaim deed, and that he never paid the Trustee rent. The parties agree that at the time the Trust and quitclaim deed were executed, both Philip Roseman and Hal Roseman intended for Philip Roseman to continue to reside at the Property for as long as Philip Roseman desired. Philip Roseman did, in fact, continue to reside at the Property until his death.

Phillip Roseman sought to have the quitclaim deed set aside on the basis that he "did not understand that his execution of the [q]uitclaim [d]eed would result in an irrevocable conveyance of complete ownership and control of the property." He did not assert that he was mentally incapacitated or under undue influence when he established the Trust and executed the quitclaim deed. However, Philip Roseman alleged that he did not read the quitclaim deed or the Trust, and no one explained the legal ramifications of the quitclaim deed or the Trust to him.

On April 25, 2017, Philip Roseman filed a motion for summary judgment and a memorandum of law in support of the motion. He also submitted his affidavit in which he stated that he did not intend for any of the beneficiaries of the Trust to have a present interest in the Property when he executed the Trust and quitclaim deed.[4] Philip Roseman averred that his continued inhabitation of the house evidenced his intention to continue to own the Property, rather than to gift the Property to the Trust.

On July 14, 2017, the Trustee filed a cross-motion for summary judgment. Among other filings, the Trustee submitted a memorandum of law, the deposition of attorney David Heller, a statement of undisputed material facts, the Trust document, the quitclaim deed, and his own affidavit. According to the Trustee, the current litigation arose only after Jean Roseman, Philip Roseman's second wife, learned about the

---

[2] It is undisputed that the Property was the only asset placed in the Trust.

[3] It is undisputed that Mr. Heller served as Philip Roseman's estate planning attorney since 1999.

[4] There are three separate affidavits of Philip Roseman in the record.

existence of the Trust in 2015. In his deposition, Mr. Heller opined that this litigation had arisen for one of three possible reasons: "one, someone is putting pressure [on Philip]; two, from a mental acuity standpoint, Phil just doesn't remember what he did and why he did it; and three, he does understand what he did, but would like to change it." However, Mr. Heller testified that, in his capacity as Philip Roseman's attorney, he explained the legal ramifications of the Trust to Philip Roseman, and Philip Roseman understood exactly what the Trust and quitclaim deed would accomplish when he executed the documents.[5] Mr. Heller also testified that Philip Roseman indicated to him that he did not want Jean Roseman to know about the Trust, and he told Mr. Heller not to call his house or send copies of documents to his house.

On August 24, 2017, the trial court held a hearing on the parties' cross motions for summary judgment, and on September 22, 2017, the trial court entered an order granting the Trustee's motion for summary judgment. The trial court's order stated in pertinent part as follows:

1. It is undisputed that Philip Roseman executed the Philip Roseman 2012 Irrevocable Gift Trust ("Trust") on December 19, 2012.

2. It is undisputed that immediately following the creation of the Trust, Philip Roseman executed a Quitclaim Deed (the "Quitclaim Deed"), which transferred title of his home 106 Savoy Circle, Nashville, Tennessee 37215 (the "Home") to the Trustee of the Trust.

3. It is undisputed that the Quitclaim Deed was recorded with the Davidson County Register of Deeds following its execution by Philip Roseman.

4. The Court has determined that it is unnecessary to make a ruling as to which party bears the burden of proof at trial [in this case] in support of this decision.

5. The Court finds that there is clear and convincing evidence that Philip Roseman intended to sign a deed transferring his ownership interest in the Home to the Trust, that he delivered ownership of the Home to the Trust by signing the Quitclaim Deed, and, thus, intended to transfer ownership interest in the Home to the Trust.

6. The Court, therefore, finds that the Quitclaim Deed is valid.

---

[5] Additionally, when questioned in his deposition as to whether he explained to his client the difference between a revocable and irrevocable trust, Mr. Heller testified: "Yes. [Philip Roseman] has had irrevocable trusts before."

7. Based on the foregoing findings of fact, the Court hereby DENIES Petitioner's Motion for Summary Judgment and GRANTS Respondent's Motion for Summary Judgment[.]

Philip Roseman timely appealed.

## STATEMENT OF THE ISSUE

Appellant has raised two issues, which we perceive as one dispositive issue.[6] We have rephrased the issue as follows:

- Whether the trial court erred in granting summary judgment, having concluded that the material and undisputed facts clearly and convincingly established that Philip Roseman made a complete gift of the Property to the Trust.

## STANDARD OF REVIEW

This Court recently discussed the standard of review that we apply in an appeal from the grant of a motion for summary judgment as follows:

[S]ummary judgment is appropriate where: (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion; and (2) the moving party is entitled to judgment as a matter of law on the undisputed facts. Tenn. R. Civ. P. 56.04. On appeal, this Court reviews a trial court's grant of summary judgment *de novo* with no presumption of correctness. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015) (citing *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997)), *cert. denied*, 136 S. Ct. 2452, 195 L.Ed. 2d 265 (2016). In reviewing the trial court's decision, we must view all of the evidence in the light most favorable to the nonmoving party and resolve all factual inferences in the nonmoving party's favor. *Luther v. Compton*, 5 S.W.3d 635, 639 (Tenn. 1999); *Muhlheim v. Knox Cnty. Bd. of Educ.*, 2 S.W.3d 927, 929 (Tenn. 1999). If the undisputed facts support only one conclusion, then the court's summary judgment will be upheld because the moving party was entitled to judgment as a matter of law. *See White v. Lawrence*, 975 S.W.2d 525, 529 (Tenn. 1998); *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995). When a moving party has filed a properly supported motion for summary judgment, the nonmoving party must

---

[6] After Philip Roseman filed a notice of appeal, he died on October 4, 2017. A suggestion of death was filed following his death, and Jean Roseman was substituted as Philip Roseman's personal representative.

respond by pointing to evidence that shows summary judgment is inappropriate. *Rye*, 477 S.W.3d at 264–65. This Court may affirm the trial court's grant of summary judgment on different grounds than that relied upon by the trial court. *Hill v. Lamberth*, 73 S.W.3d 131, 136 (Tenn. Ct. App. 2001) (citing *Wood v. Parker*, 901 S.W.2d 374 (Tenn. Ct. App. 1995)).

*Sons of Confederate Veterans Nathan Bedford Forrest Camp #215 v. City of Memphis*, No. W2017-00665-COA-R3-CV, 2017 WL 4842336, at *3 (Tenn. Ct. App. Oct. 24, 2017).

## ANALYSIS

In this case, the trial court granted summary judgment to the Trustee, having concluded that Philip Roseman made a complete gift of the Property to the Trust on December 19, 2012. Appellant avers that summary judgment was inappropriate because, according to Appellant, Philip Roseman did not intend to irrevocably transfer ownership of the Property to the Trust. To be clear, Appellant has not averred that Philip Roseman was mentally incompetent at the time he executed the Trust and the quitclaim deed, nor has Appellant averred at any point that Philip Roseman was under undue influence or the victim of fraud. Appellant avers simply that Philip Roseman did not read the Trust or the quitclaim deed, and he did not know that he had transferred complete ownership of the Property until April 2015.[7] Specifically, Appellant avers that Philip Roseman never intended to relinquish ownership of his home arguing that:

> "[t]he notion that [he] would intend to continue living uninterrupted in his Home just as he always had for as long as he wanted to and also intend to give away his Home to a trustee of an irrevocable trust that prohibits him from carrying out his intent to remain in his Home in the manner he saw fit goes beyond the bounds of reason and is perhaps too baffling and enigmatic to qualify as a topic of discussion in an advanced course in speculative philosophy."

"[A] proper donative transfer of real property is complete and irrevocable after the delivery of the deed to the grantee." *Kilgore v. Kilgore*, No. M2006-00495-COA-R3-CV, 2007 WL 2254568, at *4 (Tenn. Ct. App. May 30, 2007). "Intention to give and delivery of the subject of the gift must clearly appear." *See Figuers v. Sherrel*, 178 S.W.2d 629, 632–33 (Tenn. 1944). "Without proper delivery, title in real property cannot pass from the grantor to the grantee." *Kilgore*, 2007 WL 2254568, at *5 (citing *Miller v. Morelock*, 206 S.W.2d 427, 430–31 (Tenn. 1948)). "To effect delivery, the grantor must part with dominion and control over the deed without reservation." *Id*. (citation omitted). "Where

---

[7] We point out that Philip Roseman did not initiate this suit until April 28, 2016.

delivery is in question, the intention of the grantor, determined by his or her words and conduct, is a controlling factor." *Id.* (citation omitted). When a deed has been properly recorded, executed, and acknowledged, the presumption of intentional delivery and acceptance arises. *See Jones v. Jones*, No. 01-A-019005CH00192, 1991 WL 129197, at *4 (Tenn. Ct. App. July 17, 1991). "The presumption is particularly strong in cases involving voluntary settlements between family members[.]" *Id.* (citations omitted). Thus, when a litigant seeks to set aside a properly delivered and recorded deed, he or she must establish, by clear and convincing evidence, that the grantor intended to retain ownership of the property. *See Manning v. Snyder*, No. E2008-00183-COA-R3-CV, 2009 WL 792821, at *3 (Tenn. Ct. App. Mar. 26, 2009); *Myers v. Myers*, 891 S.W.2d 216, 219 (Tenn. Ct. App. 1994) ("[W]e note that to set aside a deed, it is well-settled that the proof must be clear, cogent and convincing.").

"A deed is a contract." *Richards v. Taylor*, 926 S.W.2d 569, 571 (Tenn. Ct. App. 1996). In evaluating a deed, we apply certain established principles. *Id.* "The interpretation of a deed is a question of law," which we review *de novo. See Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 466 (Tenn. 2012) (citations omitted). In interpreting a deed, courts ascertain the intention of the grantor from the words of the deed as a whole and from the surrounding circumstances. *Id.* "Contracts are to be judged by an objective standard, i.e., what a reasonable onlooker would conclude the parties intended from the words expressed in the instrument." *See Richards*, 926 S.W.2d at 572 (citation omitted). "It is well settled that a deed, regular on its face, and properly signed acknowledged, and recorded, will be reformed only upon the most satisfactory proof that it does not express the real intention of the parties; that is, what is known as clear, cogent, and convincing proof, or clear and indisputable proof." *Anderson v. Howard*, 74 S.W.2d 387, 390 (Tenn. Ct. App. 1934). Tennessee law provides that a deed conveys all of a grantor's estate or interest unless it clearly expresses the grantor's intent to limit the estate or interest conveyed. Tenn. Code Ann. § 66-5-101.

As the moving party, the Trustee is entitled to summary judgment "only if the pleadings, depositions, interrogatories, admissions, and affidavits show there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law." *See Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 83 (Tenn. 2008) (quoting Tenn. R. Civ. P. 56.04). "The moving party has the ultimate burden of persuading the court that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." *Id.* (citing *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993)).

The Trustee alleges that the undisputed facts in this case support only one conclusion. Specifically, the Trustee avers that the undisputed facts demonstrate that Philip Roseman intentionally made an irrevocable gift of the Property when he established the "Philip Roseman 2012 Irrevocable Gift Trust" and executed the quitclaim deed transferring title of the Property to the Trustee. Appellant avers that the Trustee was

- 6 -

not entitled to summary judgment. We find Appellant's proffered proof insufficient to create a material dispute of fact and, therefore, hold that the trial court correctly granted summary judgment to the Trustee.

The material facts concerning this transaction arose in the context of events which took place in 2012, when Philip Roseman executed the Trust and quitclaim deed. It is undisputed that Philip Roseman met with his long-time attorney, Mr. Heller, privately over several months in 2012. It is also undisputed that as a result of those meetings, Mr. Heller drafted the "Philip Roseman 2012 Irrevocable Gift Trust," which was executed by Philip Roseman on December 19, 2012. It is well established that, "[t]he intent of the grantor is to be determined from the entire instrument, read in the light of the circumstances surrounding its drafting and execution." *Cockrell v. Tuell*, 454 S.W.2d 713, 716 (Tenn. Ct. App. 1970). In this case, Philip Roseman's intent is clearly ascertainable from the contents of the documents he executed. On the same page as Philip Roseman's signature, the Trust states:

### XI. TRUSTS IRREVOCABLE

> This Trust Agreement and each trust estate created in this Trust Agreement are expressly declared to be irrevocable, and the Grantor expressly waives all rights and power, acting alone or with others, to alter, amend or change the terms and conditions of this Trust Agreement in whole or in part.

> By this Trust Agreement, the Grantor hereby renounces any interest, either vested or contingent, in the income or principal of any trust estate, and relinquishes all possession or enjoyment of, or the right to income from, the property of any trust estate, and all right and power, whether alone or in conjunction with others, to designate the persons who shall possess and enjoy the principal or income of any such trust estate.

It is also undisputed that Philip Roseman executed the quitclaim deed transferring ownership of the Property to the Trustee of the Trust, and the deed was thereafter recorded. The quitclaim deed states:

> FOR AND IN CONSIDERATION . . . of the sum of Zero Dollars ($0.00), and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, PHILIP ROSEMAN a/k/a PHILIP ROSEMAN, does remise, release and quitclaim unto, HAL M. ROSEMAN, TRUSTEE OF THE PHILIP ROSEMAN 2012 IRREVOCABLE GIFT TRUST, of their right, title and interest in and to [the Property].

- 7 -

The undisputed material facts clearly establish that the gift of the Property was completed on December 19, 2012 when the Trust and quitclaim deed were executed.[8] Philip Roseman's alleged intention as indicated in an affidavit executed nearly five years after the transaction is insufficient to create a dispute of material fact in this case. As we stated in a similar case, "[t]he delivery of the deed completed the gift and it became irrevocable." *Carmody v. Trustees of Presbyterian Church*, 203 S.W.2d 176, 177 (Tenn. Ct. App. 1947). Philip Roseman clearly intended to make an irrevocable gift. No reasonable person could conclude otherwise, and the Trustee is accordingly entitled to summary judgment.

Although we have concluded that summary judgment was appropriate in this case because the documents make clear that Philip Roseman intentionally gifted the Property to the Trust by executing the Trust and recording the quitclaim deed, we point out that the circumstances surrounding the transaction are also consistent with Philip Roseman's intention as embodied in the Trust document and the quitclaim deed.

In his deposition, Mr. Heller testified that when Philip Roseman approached him in 2012, he told Mr. Heller that he wanted to "protect the house and the wealth it represented for Hal and his descendants." Mr. Heller testified that Philip Roseman originally proposed that he transfer title of the house directly to Hal Roseman or sell Hal Roseman the house. However, according to Mr. Heller, he suggested that Philip Roseman set up an irrevocable trust. Mr. Heller testified that he suggested an irrevocable trust because, "Phil wanted it set up in a way that no one could come in and try to infiltrate and change it." He allegedly told Mr. Heller that he was "concerned that as he aged, his mental acumen and acuity would diminish." Mr. Heller testified that, "Phil feared that in such a state [relatives] may exert pressure on him to change his will and/or his revocable trust." Mr. Heller testified that he had set up both irrevocable and revocable trusts for Philip Roseman in the past, and he explained to Philip Roseman specifically that by transferring title of the Property to the Trust, he was relinquishing all ownership and control of the Property.

Appellant's argument that Philip Roseman could not possibly have made a gift of the Property and planned on continuing to reside in the Property until his death is unpersuasive for several reasons. First, Philip Roseman did, in fact, make an irrevocable gift of the Property to the aptly named "Philip Roseman 2012 Irrevocable Gift Trust," and he did continue to reside in the Property until his death on October 4, 2017. Moreover, the Trust document specifically provided that Jean Roseman, Philip Roseman's second wife, would be permitted to reside in the Property for a year after Philip Roseman's passing, rent-free. Philip and Jean Roseman's pre-nuptial agreement included a mutual waiver of claims to each other's estates, but it also included a provision providing that Jean Roseman would be entitled to live rent-free in the house where the

---

[8] The quitclaim deed indicates that it was recorded on December 27, 2012.

couple resided for a year following Philip Roseman's passing, if he predeceased her. Therefore, the Trust was consistent with Philip Roseman's contractual obligation to Jean Roseman. It is clear based on the undisputed facts that Philip Roseman intended to irrevocably transfer ownership of the Property to the Trust. Thus, we affirm the trial court's determination that the quitclaim deed was valid and the court's decision to grant summary judgment to the Trustee.

## CONCLUSION

For the foregoing reasons, we affirm the trial court's grant of summary judgment to the Trustee.

_____
ARNOLD B. GOLDIN, JUDGE